Hector RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–95–00034–CR.

Court of Appeals of Texas,
Austin.

Jan. 23, 1997.

Rehearing Overruled Feb. 27, 1997.

Carlos E. Cardenas, Abraham, Santiesteban & Cardenas, P.C., Austin, for Appellant.

Ronald Earle, District Attorney, C. Bryan Case, Jr., Assistant District Attorney, Austin, for Appellee.

Before CARROLL, C.J., and KIDD and ONION,* JJ.

## ON MOTION FOR REHEARING

ONION, Justice (Retired).

Our opinion on original submission is hereby withdrawn and the following is substituted in lieu thereof.[1]

Appellant Hector Rodriguez was indicted for the offense of indecency with a child by exposure, a third degree felony. Tex. Penal

---

*Before John F. Onion, Jr., Presiding Judge (retired), *Court of Criminal Appeals,* sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1. Our original judgment is likewise withdrawn.

---

Code Ann. § 21.11(a)(2) (West 1994).[2] Rejecting appellant's plea of not guilty, the jury found appellant guilty. At the penalty stage of the trial, the trial court deferred the adjudication of guilt and placed appellant on "community supervision" for five years subject to certain conditions.

Appellant advances two points of error. First, he urges that the trial court erred in overruling his pretrial motion to suppress the statement that he gave to police officers. Second, appellant challenges the sufficiency of the evidence to show that the eleven-year-old complainant was not his spouse as alleged in the indictment. In its cross-appeal, the State contends that the trial court erred in deferring adjudication of guilt after the jury had returned its verdict of guilty.

### FACTS

The complainant, A.H., was eleven years old at the time of the alleged offense and thirteen years old when she testified at the trial on the merits. A.H. testified that on July 16, 1993, she lived with her mother and older sister in an apartment complex. They lived next to appellant's apartment on the second floor and shared a common balcony. A.H. revealed that at about 8:00 p.m. on July 16th she was sweeping the balcony when appellant appeared nude on the balcony and remained there during the five to ten minutes that she continued to sweep. A.H. reentered her apartment, got something to drink, and watched television for a while. When she returned to the balcony to finish sweeping, appellant reappeared nude and "doing his stuff." Later, A.H. confided to her mother what she had seen. Her mother discussed the matter with a police officer friend from church and later contacted the police department.

A.H.'s mother testified that earlier on the morning of July 16th, as she was leaving for work, she encountered appellant standing in a doorway without a shirt. She was unable

---

2. The current code is cited for convenience. It remains unchanged from the law in effect at the time of the offense and applicable to this cause. Act of May 12, 1981, 67th Leg., R.S., ch. 202, § 3, 1981 Tex.Gen. Laws 471, 472 (Tex. Penal Code Ann. § 21.11(a)(2), since amended).

to determine if he was totally nude. From the parking lot a few minutes later, she observed appellant standing nude on the common balcony. She drove around and returned to the parking lot. Appellant had disappeared from the balcony. She then continued on her way to her place of employment without taking any action.

The State introduced appellant's statement given to police officers which was more exculpatory than inculpatory. It stated that appellant's newspaper was delivered every morning by being thrown on the balcony and appellant often retrieved the newspaper while wearing pajama pants. On occasion he wore only a towel wrapped around his waist which sometimes fell off when he turned to reenter his apartment.

## FAILURE TO SUPPRESS APPELLANT'S STATEMENT

In his first point of error, appellant claims that the trial court erred in failing to suppress his statement or confession because it was not shown that he had "knowingly, intelligently and voluntarily waived his privilege against self-incrimination and his right to remain silent and terminate the interview." Appellant filed a motion to suppress his statement and relied upon the Fifth Amendment to the United States Constitution, Article I, section 10 of the Texas Constitution and article 38.22 of the Texas Code of Criminal Procedure. He also claimed that the statement, improperly obtained during an interrogation, was inadmissible under article 38.23 of the Texas Code of Criminal Procedure. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex.Code Crim.Proc.Ann. art. 38.22 (West 1979), art. 38.23 (West Supp. 1997).

The trial court conducted a hearing on the motion to suppress. *See* Tex.Code Crim. Proc.Ann. art. 28.01(6) (West 1989); *see also* Tex.Code Crim.Proc.Ann. art. 38.22 (West 1979); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The record reflects that on July 26, 1993, Austin Police Sergeant Cathy Ellison of the Child Abuse Unit contacted appellant by telephone.

She told him that she was conducting an investigation involving him and would like to schedule an appointment to talk to him. Appellant agreed, but called back several times to reschedule the appointment. On the afternoon of July 27, 1993, appellant arrived at the office of the Child Abuse Unit at 7901 Cameron Road. Ellison escorted appellant to the office of Sergeant Michael Shane. Appellant was told that he was not under arrest and was free to leave at any time. He was informed that he was a suspect in an ongoing investigation concerning whether he had exposed himself to a child at the apartment complex where he lived. When told that he did not have to talk to the officers, appellant stated that he wanted to stay and "straighten this out." The *Miranda*[3] warnings were read to appellant twice. He stated that he understood his rights and signed a written statement acknowledging that he had been given the warnings. Thereafter, appellant gave and signed the written statement. The statement on its face contained the *Miranda* warnings and a statement by appellant that he understood his rights including the right to terminate the interview at any time, and that he had "knowingly, intentionally and voluntarily" waived his right to be silent and his right to have a lawyer present to advise him. In the statement, appellant acknowledged that he had read the statement and that it was true and correct and that he had freely and voluntarily given the statement without any threats or promises having been made to him.

Sergeants Ellison and Shane testified that no force had been used against appellant. After the statement was given, Officer Ellison drove appellant to his place of employment. An arrest warrant was not issued until August 19, 1993. It was executed on August 23, 1993, almost a month after the interview.

Appellant testified that a friend drove him to the Cameron Road office and that he had talked to the officers who were not in uniform. He could not remember whether they were carrying guns. Appellant admitted that he was not placed under arrest, that the

3. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

officers did not place their hands on him, and that he was told and knew that he was free to leave at any time. Later he stated that when the officers accused him of a crime he recalled his boss's admonishment not to answer questions if accused. He started to leave, but he was told by the male officer that he would be arrested if he did. He recalled that certain warnings were given to him but even when he stated that he did not completely understand, the interrogation continued. According to appellant, the male officer was very "forceful," not physically, but in his mannerisms. He stated that the officer put words in his mouth and told him that the words in the statement meant the same things as he had related to the officer. Appellant stated that he had read and signed the statement but did so out of fear that he would be arrested. The officers' testimony contradicted appellant's testimony on every point. At the conclusion of the suppression hearing, the trial court overruled the motion and entered findings of fact and conclusions of law finding that the statement had been freely and voluntarily given and was admissible in evidence.

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court may accept or reject any or all of a witness's testimony or evidence offered. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim.App.1993). In reviewing the trial court's decision, an appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's findings. *Romero*, 800 S.W.2d at 543. The appellate court is not at liberty to disturb supported findings of fact absent an abuse of discretion. *Etheridge v. State*, 903 S.W.2d 1, 15 (Tex.Crim.App.1994); *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App. 1991). The appellate court shall not defer merely to the trial court's findings regarding the historical facts but also to the trial court's conclusions regarding the legal significance of those facts. *DuBose v. State*, 915 S.W.2d 493, 497 (Tex.Crim.App.1996); *State v. Carter*, 915 S.W.2d 501, 504 (Tex.Crim. App.1996). The appellate court will normally address only the question of whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543. If the trial court's decision is correct on any theory of the law applicable to the case, it will be sustained even though the trial court may have given the wrong reason for its ruling. *Id.; Calloway v. State*, 743 S.W.2d 645, 651–52 (Tex.Crim.App.1988).

We must determine from the facts whether the trial court abused it discretion. First, we determine whether appellant was in custody and subject to custodial interrogation so as to invoke the authorities he cited and upon which he relies.

### CUSTODY AND CUSTODIAL INTERROGATION

■ If an investigation is not at an accusatorial or custodial stage, a person's Fifth Amendment rights have not yet come into play and the voluntariness of those rights is not implicated. *Melton v. State*, 790 S.W.2d 322, 326 (Tex.Crim.App.1990); *Garza v. State*, 915 S.W.2d 204, 211 (Tex.App.—Corpus Christi 1996, pet. filed). Voluntariness is an issue only if the confession was obtained while the speaker was in custody. *See White v. State*, 874 S.W.2d 229, 236 (Tex.App.—Houston [14th Dist.] ), *pet. dism'd*, 890 S.W.2d 69 (Tex.Crim.App.1994). *Miranda* and article 38.22 apply only to statements made as a result of custodial interrogation. *Kelley v. State*, 817 S.W.2d 168, 173 (Tex. App.—Austin 1991, pet. ref'd). They are not applicable to statements resulting from non-custodial interrogation. *Stone v. State*, 583 S.W.2d 410, 413 (Tex.Crim.App.1979); *Parra v. State*, 743 S.W.2d 281, 285 (Tex.App.—San Antonio 1987, pet. ref'd) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)). Thus, if appellant's statement did not stem from a custodial interrogation, neither *Miranda* nor article 38.22 require its suppression. *See Morris v. State*, 897 S.W.2d 528, 531 (Tex.App.—El Paso 1995, no pet.); *Galloway v. State*, 778 S.W.2d 110, 112 (Tex.App.—Houston [14th Dist.] 1989, no pet.).

■ "Custodial interrogation" is questioning initiated by law enforcement officers af-

ter a person has been taken into custody or otherwise deprived of his freedom in any significant way. *Cannon v. State,* 691 S.W.2d 664, 671 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986) (citing *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612); *Kelley,* 817 S.W.2d at 173. In determining whether an individual was in custody, the court must examine all the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a "formal arrest or restraint of movement' of the degree associated with formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714); *see also Meek v. State,* 790 S.W.2d 618, 621 (Tex.Crim.App. 1990); *La Point v. State,* 650 S.W.2d 821, 824 (Tex.Crim.App.1983).

■ Four factors have been said to be relevant to the inquiry: (1) probable cause to arrest; (2) focus of the investigation; (3) subjective intent of the police; and (4) subjective belief of the defendant. *Melton,* 790 S.W.2d at 326; *Meek,* 790 S.W.2d at 621–22; *Turner v. State,* 685 S.W.2d 38, 42 (Tex.Crim. App.1985); *Kiser v. State,* 788 S.W.2d 909, 911–12 (Tex.App.—Dallas 1990, pet. ref'd). In deciding what weight to assign the various factors, recent federal authority has noted that United States Supreme Court precedent has substantially undermined the four factors comprising the "in custody" test under *Miranda. See United States v. Bengivenga,* 845 F.2d 593, 596 (5th Cir.), *cert. denied,* 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988). *Bengivenga* adopted the more flexible "reasonable person" test, factoring out the earlier test. 845 F.2d at 596; [4] *see also Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984) (announcing that the only relevant custody inquiry is whether a reasonable person would

have understood that he was under arrest and disavowing significance of whether police had probable cause to arrest).

■ *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), established the rules for determining whether a person being questioned by law enforcement officers is held in custody and thus entitled to the *Miranda* warnings. The Court made clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Id.,* 511 U.S. at 323–24, 114 S.Ct. at 1529, 128 L.Ed.2d at 298. Thus, the officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether an individual is in custody for the purpose of *Miranda. Id.,* 511 U.S. at 322–26, 114 S.Ct. at 1529–30. The court further noted that focus alone does not constitute custody. *Id.* at 324, 114 S.Ct. at 1529 (citing *Minnesota v. Murphy,* 465 U.S. 420, 431, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984)). In light of the reasonable person test, an officer's knowledge and belief may bear upon the *Miranda* custody issue if they are conveyed to the individual being questioned, but even a clear statement by an officer that the person under interrogation is the prime suspect is not in itself dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. *Id.,* 511 U.S. at 324–26, 114 S.Ct. at 1530. The four factors test appears to retain little or no viability since the Court of Criminal Appeals has adopted the reasonable person test of *Stansbury. See Dowthitt v. State,* 931 S.W.2d 244, 254–55 (Tex.Crim.App.1996).[5]

4. A suspect is therefore "in custody" for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances. *Bengivenga,* 845 F.2d at 596.

5. *Stansbury* was also applied in *Rice v. State,* 893 S.W.2d 734, 734 (Tex.App.—Texarkana 1995, pet. ref'd). For an interesting discussion of the four factors test and the reasonable person test, *see Lee v. State,* 893 S.W.2d 80, 85 n. 2 (Tex. App.—El Paso 1994, no pet.).

▉ In the instant case, appellant heeded the invitation or request of a police officer to come to her office regarding an ongoing investigation. He rescheduled the appointment several times and later had a friend drive him to the office of the Child Abuse Unit. We are unaware of any rule of law that forbids lawfully constituted peace officers from requesting individuals to accompany them or to come to police offices in furtherance of an investigation of a crime. Nor are we aware of any legal rule that forbids one to reject such requests. If the circumstances show that the individual acts upon the invitation or request of a police officer and there are no threats, express or implied, that he will be forcibly taken, then that person is not in custody for the purposes of *Miranda. See Shiflet v. State,* 732 S.W.2d 622, 628 (Tex.Crim.App.1985); *Dancy v. State,* 728 S.W.2d 772, 778 (Tex.Crim.App.), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

▉ When appellant arrived at the police offices on Cameron Road, he clearly was not in custody. Once in Sergeant Shane's office, he was told that he was not under arrest and was free to leave. Appellant indicated that he understood this. He later testified that he was under the impression he would be arrested if he tried to leave.[6] This was apparently his own subjective view. *Miranda* warnings were given, but this action probably reflects the officers' cautiousness rather than their intent to arrest or restrain appellant under the objective circumstances of the interrogation. *See Dancy,* 728 S.W.2d at 777; *Garza,* 915 S.W.2d at 213. Only indirectly does appellant suggest that the focus was on him as the sole suspect at the time. As noted in *Stansbury,* focus alone does not constitute custody for *Miranda* purposes. Further, the subjective views of the officers are not relevant to the question of custody. Here, it appears that the officers conveyed to appellant that he was "a suspect" in the ongoing investigation and, as *Stansbury* teaches, this may bear upon the *Miranda* custody issue in light of the reason-

able person test. However, an officer's statement to an individual that he is a "prime suspect" does not, in and of itself, dispose of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. Appellant was allowed to leave. In fact, one of the officers drove him to his place of employment. Appellant was not arrested for approximately a month. The fact that a noncustodial situation involved a "coercive environment" is not sufficient to constitute custody for *Miranda* purposes. *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714. Under the reasonable person test, appellant was not in custody nor was he subjected to custodial interrogation at the time the statement was given. *Miranda* and article 38.22 did not come into play, and thus article 38.23 was inapplicable.

▉ If it could be argued that appellant was in custody and the statement was obtained as a result of custodial interrogation, it is undisputed that appellant was given the warnings required by *Miranda* and article 38.22. Appellant voluntarily signed the statement and affirmatively waived in writing his right to remain silent. He understood but did not exercise his right to terminate the interview at any time. The trial court did not abuse its discretion in denying the motion to suppress. The first point of error is overruled.

### *SUFFICIENCY OF EVIDENCE*

▉ In his second point of error, appellant claims that the trial court erred in denying his motion for an instructed verdict of not guilty because the State failed to prove beyond a reasonable doubt that the complainant, A.H., was not his spouse, an essential element of the offense with which he was charged.

Section 21.11(a)(2) of the Penal Code in effect at the time of the alleged offense[7] provided:

(a) A person commits an offense if, with a child younger than 17 years *and not his*

---

6. Appellant's testimony that he was told this by Sergeant Shane was sharply contradicted by Shane and Sergeant Ellison.

7. *See* note 2.

*spouse,* whether the child is of the same or opposite sex, he:

(2) exposes his anus or any part of his genitals, knowing the child is present, with intent to arouse or gratify the sexual desire of any person.

(emphasis added).

The instant indictment accordingly alleged that A.H., the complainant, was not the spouse of appellant. The State did not directly establish this element of the offense. Appellant's contention concerning the denial of his motion for directed or instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. *See Madden v. State,* 799 S.W.2d 683, 686 & n. 3 (Tex.Crim.App.1990). From the authorities cited by appellant, we conclude that this challenge is to the *legal* sufficiency of the evidence. In analyzing such a challenge, we examine all the evidence in the light most favorable to the verdict and then determine whether any rational trier of fact could have found beyond a reasonable doubt all the essential element of the offense charged. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993); *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied,* 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). This standard is applied in both direct and circumstantial evidence cases. *Herndon v. State,* 787 S.W.2d 408, 409 (Tex.Crim.App.1990); *Price v. State,* 911 S.W.2d 129, 131 (Tex.App.—Corpus Christi 1995, pet. ref'd). The reviewing court does not realign, disregard, or weigh the evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988). Normally, the sufficiency of the evidence is measured by looking at the indictment as incorporated in the jury charge. *Jones v. State,* 815 S.W.2d 667, 668 (Tex.Crim.App.1991). We observe that the jury charge in the instant case tracked the allegations of the indictment.

In examining the evidence before the jury, we find that the complainant testified that she was eleven years old at the time of the commission of the offense. She related that she had lived with her mother and sister in an apartment for four years; that "Hector [appellant] and Angela" had lived in the next apartment for two to three years, that she did not meet appellant when he moved in, and that while she saw him from time to time they never really spoke to each other. Angela Moore testified for the defense. She identified herself as appellant's wife. While she acknowledged there had been no formal marriage ceremony, she related that their common law marriage had existed for seven or eight years. Appellant also identified Angela Moore as his wife.

In *Zewoldermariam v. State,* 730 S.W.2d 354 (Tex.App.—Dallas 1987, no pet.), the court held that the fact the complainant was eleven years old was sufficient evidence to establish that she was not the wife of the defendant in an indecency with a child prosecution. *Id.* at 354 (citing *Chavez v. State,* 508 S.W.2d 384, 386 (Tex.Crim.App.1974)).

Appellant calls attention to the provision of section 2.41 of the Texas Family Code that a licensed or informal marriage of a person under fourteen years of age, unless a court order has been obtained as provided in section 1.53 of the code, is voidable and subject to annulment on the petition of a parent or next friend on behalf of the underaged party. Tex.Fam.Code Ann. § 2.41 (West 1993). Appellant argues that under section 1.53 of the Family Code it could be possible for a court order to be obtained and a marriage of a person under fourteen years of age to be valid. Tex.Fam.Code Ann. § 1.53 (West 1993). Appellant then urges that the complainant could have legally been his spouse and that the State did not establish a necessary element of the offense alleged.

We reject appellant's argument. We find the holding in *Zewoldermariam* to be persuasive, and in light of the fact that the complainant was eleven years old at the time and that appellant and Angela Moore were married, we find that any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense, including the element of the offense that the complainant was not the spouse of appellant. The second point of error is overruled.

## STATE'S CROSS-APPEAL

In its cross-appeal, the State contends that the trial court erred in deferring the adjudication of guilt after the jury had returned a verdict of guilty.

At the penalty stage of the trial before the court,[8] neither party offered evidence on the issue of punishment. Appellant asked the trial court to grant deferred adjudication of guilt not under section 5(a), but under section 3(a) of article 42.12. Tex.Code Crim.Proc. Ann. art. 42.12, §§ 3(a), 5(a) (West Supp. 1997). The prosecutor objected that the plea had been "not guilty" and that the jury's verdict of "guilty" precluded deferred adjudication of guilt. The trial court noted that defense counsel had called its attention to a change in the statute and that under section 3(a) a trial court could grant deferred adjudication as a form of community supervision "after conviction or a plea of guilty." Thereafter, the trial court granted appellant deferred adjudication of guilt and placed him on community supervision for five years subject to certain conditions, none of which involved confinement. Prior thereto no effort was made to set aside the jury's verdict or to withdraw the plea of not guilty, to waive trial by jury, or enter a plea of guilty or nolo contendere, or take any action to alter the status of the case before the trial court granted deferred adjudication. The formal judgment reflects the incongruous events of appellant's not guilty plea, the jury's verdict of guilty, and the trial court's subsequent action of deferring adjudication of guilt. The State gave timely notice of appeal. See Tex. Code Crim.Proc.Ann. art. 44.01 (West Supp.

1997). The notice of appeal is based on the fact that there was an order modifying the judgment, granting a new trial, and imposing an illegal sentence. See art. 44.01(a)(2), (a)(3) & (b).[9] The difficulty presented with the three bases for appeal by the State is that there is no order arresting or modifying the judgment, no order granting a new trial, and there is no "sentence" in which there has been a deferred adjudication. The State's notice of appeal does not rely upon article 44.01(c), which permits the State to appeal "a ruling on a question of law if the defendant is *convicted* in the case and appeals the judgment." Tex.Code Crim.Proc.Ann. art. 44.01(c) (West Supp.1997).[10] We conclude that the State's appeal is not properly before this Court. The State's appeal is dismissed.

## UNASSIGNED ERROR

In view of the circumstances displayed by this record, we shall in the interest of justice review as unassigned error the authority of the trial court to defer adjudication of guilt after the jury's verdict. See *Carter v. State*, 656 S.W.2d 468, 468–70 (Tex. Crim.App.1983); see also *Lopez v. State*, 708 S.W.2d 446, 448 (Tex.Crim.App.1986); *Barney v. State*, 698 S.W.2d 114, 123 (Tex.Crim. App.1985); *State v. Lara*, 924 S.W.2d 198, 201 n. 3 (Tex.App.—Corpus Christi 1996, no pet.); *State v. Shepard*, 920 S.W.2d 420, 422 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd); *Kieschnick v. State*, 911 S.W.2d 156, 163 (Tex.App.—Waco 1995, no pet.) (court authorized on appeal "to revise whole case upon the law and facts exhibited in record");

---

8. See Tex.Code Crim.Proc.Ann. art. 37.07(2)(b) (West Supp.1996). It is the judge's responsibility to assess punishment where the defendant has not elected the jury to assess punishment or in cases where the jury may recommend probation and a sworn motion for probation has been filed.

9. Article 44.01 provides in pertinent part:
   (a) The state is entitled to appeal an order of a court in a criminal case if the order; ...
   (2) arrests or modifies a judgment;
   (3) grants a new trial;
   (b) The state is entitled to appeal a sentence in a case on the ground that the sentence is illegal.
   (c) The state is entitled to appeal a ruling on a question of law if the defendant is convicted in the case and appeals the judgment.

Tex.Code Crim.Proc.Ann. art. 44.01(a)(2), (a)(3) & (b) (West Supp.1997).

10. The State is required to file its appeal within 15 days from the date of the order, ruling, or sentence from which the appeal is taken if the appeal is under subsection (c) or (b) of article 44.01. Tex.Code Crim.Proc.Ann. art. 44.01(d) (West Supp.1997). In the instant case, appellant did not file his notice of appeal until 30 days after the date of the judgment. Thereafter the State did not amend its notice of appeal or file a new notice to include subsection (c). Moreover, if it had, the question of whether deferring adjudication of guilt constitutes a conviction so as to invoke subsection (c) would be raised.

*Garza v. State,* 676 S.W.2d 185, 187 (Tex. App.—Corpus Christi 1984, pet. ref'd) (holding that authority of courts of appeals to consider unassigned error in criminal cases is not open to question).

■■■ At trial and in response to the State's appeal, appellant contends that changes made in article 42.12, the former Adult Probation Law and now the Adult Community Supervision statute, support the trial court's action. *See* Tex.Code Crim.Proc. Ann. art. 42.12 (West Supp.1997). Appellant argued that "deferred adjudication" is included within the definition of "community supervision" found in section 2 of article 42.12 and that when the term "community supervision" is used in section 3 it authorizes the trial court to utilize deferred adjudication even "after conviction."

Section 2(2)(A), (B) provides:

(2) "Community supervision" means the placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by the court for a specified period during which:

    (A) criminal proceedings are deferred *without an adjudication of guilt;* or

    (B) a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part.

Tex.Code Crim.Proc.Ann. art. 42.12, § 2(2)(A), (B) (West Supp.1997) (emphasis added). Section 3(a) provides:

(a) A judge, in the best interest of justice, the public, and the defendant, after conviction or a plea of guilty or nolo contendere, may suspend the imposition of the sentence and place the defendant on community supervision or impose a fine applicable to the offense

and place the defendant on community supervision.

Tex Code Crim.Proc.Ann. art. 42.12, § 3(a) (West Supp.1997). Section 4 of article 42.12 provides for jury-given community supervision. Tex.Code Crim.Proc.Ann. art. 42.12, § 4 (West Supp.1997). Section 5 refers to the form of community supervision known as deferred adjudication and provides in pertinent part:

(a) Except as provided by Subsection (d) of this section, when in the judge's opinion the best interest of society and the defendant will be served, the *judge may, after receiving a plea of guilty or plea of nolo contendere,* hearing the evidence, and finding that it substantiates the defendant's guilt, *defer further proceedings without entering an adjudication of guilt,* and place the defendant on community supervision.

Tex.Code Crim.Proc.Ann. art. 42.12, § 5(a) (West Supp.1997) (emphasis added).

■■■ Prior to the enactment of the current Adult Community Supervision statute,[11] section 3(a) was subsumed within a broader section 3 of the former Adult Probation Law which pertained only to judge-given "regular" probation. Current section 5 existed in section 3d(a) of the former law and pertained to deferred adjudication "probation." The principal change in the statutory language *relevant to this appeal* is that the nomenclature "probation" has been changed to "community supervision." The phrases generally mean the same thing and are used interchangeably.[12]

There are several different forms or types of community supervision included within the definition in section 2(2)(A), (B) of article 42.12 and whose use is provided for in the other sections of the statute. They are regular, deferred adjudication, shock,[13] and state jail felony forms of community supervision.[14]

---

11. Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 4.01, 1993 Tex.Gen. Laws 3586, 3716–43.

12. The principal constitutional basis for community supervision is article IV, section 11A of the Texas Constitution which uses the term "probation." *See* note 16, *infra.*

13. The definition of community supervision seems intended to encompass shock community supervision, *although* the sentence is actually imposed and then the execution of the sentence is suspended.

14. Pretrial intervention is provided for elsewhere. *See* Tex.Code Crim.Proc.Ann. art. 42.13, § 11(a) (West Supp.1997).

Each form has its own limitations and requirements. Each is independent of the other in the sense that a defendant may be eligible for one or two forms of community supervision, but not another. *See West v. State*, 702 S.W.2d 629, 634 (Tex.Crim.App. 1986), *withdrawn on procedural grounds*, 725 S.W.2d 718, 719 (Tex.Crim.App.1987) (holding that the State's petition for discretionary review was untimely filed).[15]

Appellant urges a unique interpretation of article 42.12. His contention carried to its logical conclusion would mean that whenever the term "community supervision" is found in the various sections of article 42.12 it must be given the all-inclusive definition found in section 2(2)(A), (B), and that one form or type of community supervision would necessarily include all others. He particularly argues that the use of the term in section 3 pertaining to judge-given regular community supervision means that under section 3 the trial court may also grant deferred adjudication even "after conviction" without regard to the requirements of section 5 pertaining to deferred adjudication community supervision. We do not agree.

■ The overriding principle in interpreting statutes is to give effect to the collective intent of the legislature. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). "When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Id.* at 785.

Over the years, article 42.12 has been frequently amended. The current version still resembles an umbrella constructed and stretched to cover too many subjects. The application of the statute's plain language, however, does not lead to absurd consequences that the legislature could not possibly have intended. There is no basis for construction by the courts. *Id.* at 785. We shall apply the language literally, reading the statute as a whole as it is applicable to the instant appeal.

■ When a defendant is placed on regular community supervision, he or she is convicted of the offense charged and the punishment is assessed by judge or jury. The imposition of the sentence is suspended and the defendant is placed on regular community supervision. The original plea may be "not guilty." *See* article 42.12, §§ 3, 4. The option of deferred adjudication, by its very terms, is limited to defendants who plead guilty or nolo contendere before the trial court after waiving trial by jury. Article 42.12, § 5; *Reed v. State*, 644 S.W.2d 479, 483 (Tex.Crim.App.1983). The essence of deferred adjudication is that a defendant is not found guilty and is not convicted of any offense. *McNew v. State*, 608 S.W.2d 166, 172 (Tex.Crim.App.1978).[16]

A defendant who enters a plea of not guilty and who persists in that plea is not eligible to receive deferred adjudication. *Dix*, § 39.48 at 729. The granting of deferred adjudication under section 5(a) must also be done "without entering an adjudication of guilt." This refers to the entry of a finding of guilt in the judgment entered in the case. Tex. Code Crim.Proc.Ann. art. 42.01 (West Supp. 1997); *Dix*, § 39.48 at 728.

15. A defendant may not be eligible for judge-given regular community supervision under section 3 if he is charged with one of the offenses listed in section 3g(a). Tex.Code Crim.Proc.Ann. art. 42.12, § 3g(a) (West Supp.1997). These offenses do not render a defendant ineligible for jury-given regular community supervision under section 4 of the statute, or for deferred adjudication community service under section 5 of the statute. *See* 42 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure*, § 39.51 at 730 (Texas Practice 1991) (hereinafter Dix); *Powers v. State*, 727 S.W.2d 313, 315–17 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). On the other hand, certain offenses render the defendant ineligible for deferred adjudication but not for regular community supervision. Tex. Code Crim.Proc.Ann. art. 42.12, § 5(d) (West Supp.1997).

16. Deferred adjudication community supervision does not meet the definition of probation in Article IV, Section 11A of the Texas Constitution. However, it is a type of probation (community supervision) that was lawfully authorized by the legislature under its constitutional legislative power in Article III, Section 1 of the state constitution. *McNew*, 608 S.W.2d at 176.

In *State v. Davenport,* 866 S.W.2d 767, 769–70 (Tex.App.—San Antonio 1993, no pet.), the defendant waived trial by jury and entered a plea of not guilty in a bench trial. After hearing evidence, the trial court found the defendant guilty, but prior to the penalty stage of the trial, the court sua sponte, without setting aside the finding of guilt or the withdrawal of the plea, granted deferred adjudication. There, it was held that the trial court acted without the authority of law. *Id.* at 770. If the punishment is not authorized by law, the order imposing punishment is void. *Heath v. State,* 817 S.W.2d 335, 336 (Tex.Crim.App.1991). *Davenport* is distinguishable from *State v. Sosa,* 830 S.W.2d 204, 205 (Tex.App.—San Antonio 1992, pet. ref'd), where the defendant entered a plea of not guilty in a bench trial, was found guilty, but was allowed to withdraw his former plea and enter a guilty plea, whereupon the trial court granted deferred adjudication. The *Sosa* court did not look with favor on the procedure used, but held that, upon the withdrawal of the plea, the action taken was within the discretion of the trial court. *See also Powers v. State,* 727 S.W.2d 313, 316–17 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd); *West,* 702 S.W.2d at 634–35. In *Sosa, Powers,* and *West,* the original plea in each case was withdrawn, a guilty plea was entered, and the trial court granted deferred adjudication prior to any entry of a finding of guilt in the judgment.

In the instant case, appellant persisted in entering his not guilty plea. He did not waive trial by jury. At the penalty stage of the trial, after the jury had found him guilty, he asked for and was granted deferred adjudication. The jury's verdict was not set aside, appellant's plea was not withdrawn, no plea of guilty or nolo contendere was entered, and the jury's verdict was made an integral part of the formal judgment. The trial court was in error in granting deferred adjudication community supervision. Appellant misled the court as to the proper construction of article 42.12, particularly section 3(a). The judgment is void insofar as it grants deferred adjudication. *Heath,* 817 S.W.2d at 336. The unassigned error is sustained.

Appellant's two points of error are overruled and the judgment as to guilt is affirmed. The State's cross-appeal is dismissed. As the unassigned error relates to punishment only, the cause is remanded for a new penalty hearing. *See* Tex.Code Crim. Proc.Ann. art. 44.29(b) (West Supp.1996).