TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00242-CR







Larry Duarte, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0992326, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







A jury found appellant Larry Duarte guilty of intentionally or knowingly inflicting
serious bodily injury or serious mental deficiency, impairment, or injury to a child. See Tex.
Penal Code Ann. § 22.04(a)(1), (2) (West Supp. 2000). The jury assessed punishment at
imprisonment for life. Appellant contends the evidence is legally and factually insufficient to
sustain the guilty verdict and that his videotaped statement to the police should have been
suppressed. We will overrule these contentions and affirm.

On January 14, 1999, appellant's wife, Rebecca Duarte, took their two-week-old
daughter, Victoria, to her pediatrician's office for a scheduled well-baby checkup. Duarte
reported that Victoria had been coughing and wheezing, and a chest X-ray revealed that the child
had pneumonia. The physician's assistant who conducted the examination also noticed bruises
near the child's left eye and ear which caused him to be concerned that she had been mishandled. 
Victoria was ordered hospitalized for treatment of the pneumonia and for further evaluation of her
head injuries.

Tests at the hospital disclosed that Victoria had a linear skull fracture on the left
side of her cranium with related bleeding between the skull and brain. Doctors also found a
metaphyseal fracture of the left leg. Doctors testified that such a fracture results when the leg is
violently twisted and is "highly specific for child abuse."

When interviewed at the hospital about Victoria's injuries, Rebecca Duarte and
appellant reported that Victoria and her eleven-month-old brother, Frank, had been left with
appellant while Rebecca and her parents went shopping. During this time, appellant and the
children napped on a mattress on the floor. Appellant said that when he awakened, Frank had
turned on the mattress so that his feet were by Victoria's head. Appellant said that he saw Frank
kick Victoria's head. Doctors testified that an eleven-month-old child could not have kicked with
sufficient force to fracture Victoria's skull. They hypothesized that Victoria had been picked up
by the leg and shaken, causing the leg fracture. At some point, her head had struck a hard
surface, causing the skull fracture and bruising.

Detective Brett Wilson interviewed appellant and his wife at the child protective
services office. Appellant repeated his story about Frank kicking Victoria. When Wilson said that
he did not believe this, appellant told the officer that he had accidentally dropped Victoria. Wilson
told appellant that this would not explain the seriousness of the child's injuries. Appellant then
explained that after he dropped Victoria, she would not stop crying. Appellant threw her onto the
bed, then picked her up and threw her onto the floor. Appellant admitted knowing that the child
was seriously injured.

In his points of error challenging the sufficiency of the evidence, appellant does not
deny that he was shown to have intentionally or knowingly injured his infant daughter. Appellant
contends only that the State failed to prove that the injuries were of the degree necessary to support
a first degree felony conviction. See id. § 22.04(e). He contends in two points of error that the
evidence is legally and factually insufficient to support a finding that Victoria suffered serious
mental deficiency, impairment, or injury. See id. § 22.04(a)(2). In a third point, appellant
contends the evidence is factually insufficient to support a finding that the child received a serious
bodily injury. See id. § 22.04(a)(1).

A factual sufficiency challenge presupposes that the evidence is legally sufficient
to sustain the verdict. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); Stone v.
State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). Because
appellant does not challenge the legal sufficiency of the evidence to support a finding that he
caused serious bodily injury to the child, and because such a finding is alone sufficient to sustain
the jury's verdict, we need not address his evidentiary contentions. Points of error one, two, and
three are overruled.

A videotape of appellant's interview with Detective Wilson was introduced in
evidence over appellant's objection. In points of error four and five, appellant contends the
confession was taken in violation of his rights under federal and state law. Specifically, appellant
urges that he was not advised of his rights prior to questioning, and as a consequence did not
knowingly and voluntarily waive those rights before making his statement. See Miranda v.
Arizona, 384 U.S. 436, 478-79 (1966); Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (West
Supp. 2000). The district court overruled appellant's objection on the ground that he was not in
custody when the statement was made.

Miranda and article 38.22 apply only to statements resulting from custodial
interrogation. Rodriguez v. State, 939 S.W.2d 211, 215 (Tex. App.--Austin 1997, no pet.). 
Whether a statement is the product of custodial interrogation must be determined on an ad hoc
basis after considering all of the objective circumstances. Dowthitt v. State, 931 S.W.2d 244, 255
(Tex. Crim. App. 1996). "A person is in 'custody' only if, under the circumstances, a reasonable
person would believe that his freedom of movement was restrained to the degree associated with
a formal arrest." Id. at 254 (citing Stansbury v. California, 511 U.S. 318, 322 (1994)). The
district court's conclusion that appellant was not in custody when he made the statement presents
a mixed question of law and fact that we review de novo. See Hernandez v. State, 957 S.W.2d
851, 852 (Tex. Crim. App. 1998).

Wilson testified that after being assigned to investigate the Duarte matter as a
possible child abuse case, he went to the child protective services office to speak to the case
worker. Appellant and his wife came to the office while Wilson was there to bring toys and
clothes to their two children, who had been taken from their home the previous day. Wilson spoke
privately to each. He told appellant when his interview began that he was not under arrest and was
free to go at any time. Appellant indicated that he understood. In the course of the subsequent
interview, appellant made the statements previously discussed. Appellant then left the office, and
was not arrested until three days later.

Appellant concedes that he was not in custody when the interview began. He
argues, however, that custody began when he admitted to Wilson that he had dropped the baby. 
Appellant urges that his situation was like that of the defendant in Dowthitt, in which the court of
criminal appeals concluded that a suspect's custody began when he told officers during a voluntary
station-house interview that he had been present when the murders under investigation had been
committed. See Dowthitt, 931 S.W.2d at 256-57. The court wrote:


While [the defendant] did not admit to committing the offenses, his
admission that he was present during the murders was incriminating, and a
reasonable person would have realized the incriminating nature of the admission. 
Given the length of the interrogation, the existence of factors involving the exercise
of police control over [the defendant] (accompanying [defendant] at restroom
breaks, ignoring requests to see his wife), and [the defendant's] damaging
admission establishing probable cause to arrest, we believe that "custody" began
after [the defendant] admitted to his presence during the murders.



Id. at 257.

While Dowthitt shows that a crucial admission may turn a noncustodial encounter
into a custodial one, it is clear that the admission was not the only factor considered by the court. 
Dowthitt's admission to being present at the murders was made at 1:00 a.m., after twelve hours
of more-or-less continuous questioning at the police station. See id. at 256. Officers ignored two
requests by Dowthitt to see his wife. See id. Officers accompanied Dowthitt during restroom
breaks, and it was clear at least six hours before the admission that Dowthitt was a suspect. See
id. As the quoted passage makes clear, all of these circumstances contributed to the conclusion
that custody began when Dowthitt made his crucial admission.

Wilson's interview with appellant did not take place at the police station, but at the
offices of child protective services. Appellant was told repeatedly during the interview that he was
not under arrest and could leave at any time. Appellant admitted dropping Victoria thirty minutes
after the interview began. This admission may have caused Wilson to focus on appellant as a
suspect, or even given Wilson probable cause to arrest, but there is no showing that the officer's
subjective intent or belief was conveyed to appellant. See Dowthitt, 931 S.W.2d at 254 (custody
determination based entirely on objective circumstances; subjective intent of police irrelevant
except to extent it may be manifested in words or actions). While it is apparent from watching
the videotape that appellant understood he was a suspect in the ongoing investigation, this is not
in itself determinative of the custody issue. See Rodriguez, 939 S.W.2d at 217. Appellant left
Wilson's office fifty minutes after the interview began and went home with his wife. Considering
all these circumstances, we conclude that a reasonable person in appellant's position would not
have believed that his freedom of movement had been restrained to the degree associated with a
formal arrest. 

Because appellant was not in custody, it was not necessary for Wilson to advise him
of his rights before questioning him. Miranda and article 38.22 were not violated. Points of error
four and five are overruled.


The judgment of conviction is affirmed.



 __________________________________________

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: December 21, 2000

Do Not Publish


ting Stansbury v. California, 511 U.S. 318, 322 (1994)). The
district court's conclusion that appellant was not in custody when he made the statement presents
a mixed question of law and fact that we review de novo. See Hernandez v. State, 957 S.W.2d
851, 852 (Tex. Crim. App. 1998).

Wilson testified that after being assigned to investigate the Duarte matter as a
possible child abuse case, he went to the child protective services office to speak to the case
worker. Appellant and his wife came to the office while Wilson was there to bring toys and
clothes to their two children, who had been taken from their home the previous day. Wilson spoke
privately to each. He told appellant when his interview began that he was not under arrest and was
free to go at any time. Appellant indicated that he understood. In the course of the subsequent
interview, appellant made the statements previously discussed. Appellant then left the office, and
was not arrested until three days later.

Appellant concedes that he was not in custody when the interview began. He
argues, however, that custody began when he admitted to Wilson that he had dropped the baby. 
Appellant urges that his situation was like that of the defendant in Dowthitt, in which the court of
criminal appeals concluded that a suspect's custody began when he told officers during a voluntary
station-house interview that he had been present when the murders under investigation had been
committed. See Dowthitt, 931 S.W.2d at 256-57. The court wrote:


While [the defendant] did not admit to committing the offenses, his
admission that he was present during the murders was incriminating, and a
reasonable person would have realized the incriminating nature of the admission. 
Given the length of the interrogation, the existence of factors involving the exercise
of police control over [the defendant] (accompanying [defendant] at restroom
breaks, ignoring requests to see his wife), and [the defendant's] damaging
admission establishing probable cause to arrest, we believe that "custody" began
after [the defendant] admitted to his presence during the murders.



Id. at 257.

While Dowthitt shows that a crucial admission may turn a noncustodial encounter
into a custodial one, it is clear that the admission was not the only factor considered by the court. 
Dowthitt's admission to being present at the murders was made at 1:00 a.m., after twelve hours
of more-or-less continuous questioning at the police station. See id. at 256. Officers ignored two
requests by Dowthitt to see his wife. See id. Officers accompanied Dowthitt during restroom
breaks, and it was clear at least six hours before the admission that Dowthitt was a suspect. See
id. As the quoted passage makes clear, all of these circumstances contributed to the conclusion
that custody began when Dowthitt made his crucial admission.

Wilson's interview with appellant did not take place at the police station, but at the
offices of child protective services. Appel