

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00083-CR

_____

JUAN RAMIREZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR18-0701

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

On July 15, 2019, Appellant Juan Ramirez pleaded guilty—without the benefit of a plea bargain—to the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.09. The trial court found Ramirez guilty, sentenced him to ten years in prison, assessed a $1,000 fine, suspended the sentence of confinement, and placed him on community supervision for ten years.

Two years later, on July 15, 2021, the State filed a motion to revoke Ramirez's community supervision. On March 16, 2022, the trial court found the allegations in the State's motion true, revoked Ramirez's community supervision, sentenced him to ten years in prison, and assessed a $1,000 fine.[1]

Ramirez appealed. In one issue, Ramirez contends, "The Trial Court Abused its Discretion in Revoking [his] Probation because [he] had been Deported and could not Comply with [the] Terms and Conditions of Probation." Ramirez also argues that the trial court abused its discretion because it made no inquiry into his financial circumstances and whether he was able to pay the assessed fines and court costs. *See*

---

[1]Normally we note the defendant's plea, but in Ramirez's case, he never entered a plea one way or the other. The prosecutor stated that its motion was "contested across the board," and the hearing proceeded as if Ramirez had entered a plea of not true. In the context of a revocation proceeding, his failure to enter a plea is immaterial. *See Detrich v. State*, 545 S.W.2d 835, 837 (Tex. Crim. App. 1977); *Moore v. State*, No. 14-14-00350-CR, 2015 WL 4141100, at *3 (Tex. App.—Houston [14th Dist.] July 9, 2015, pet. ref'd) (mem. op., not designated for publication).

Tex. Code Crim. Proc. Ann. art. 42A.751(i).[2] We hold that the trial court did not abuse its discretion and affirm the trial court's judgment.

## I. The State's Motion to Revoke

In the State's motion to revoke, among other alleged violations, it asserted that Ramirez had violated condition (d) of his community supervision, which required him to report to his probation[3] officer each month beginning in August 2019[4]:

> (d) The Defendant, JUAN RAMIREZ, failed to timely report to a Community Supervision Officer of Parker County, Texas[,] for the months of January, February, March, April, May, June, July, August,

---

[2]Article 42A.751(i) provides,

In a revocation hearing at which it is alleged only that the defendant violated the conditions of community supervision by failing to pay community supervision fees or court costs or by failing to pay the costs of legal services as described by Article 42A.301(b)(11), the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge.

Tex. Code Crim. Proc. Ann. art. 42A.751(i).

[3]For purposes of this opinion, "probation" and "community supervision" mean the same thing. *See Rodriguez v. State*, 939 S.W.2d 211, 220 (Tex. App.—Austin 1997, no pet.) (op. on reh'g).

[4]Condition (d) provided,

(d) Report to the Community Supervision Officer of Parker County, Texas, or to the Community Supervision Officer you are assigned upon a transfer of community supervision between the 1st and 15th days of each month during the period of community supervision beginning in the month of AUGUST 2019. Defendant shall also report to the . . . 415th Judicial District Court for administrative review when notified by the community supervision officer.

3

September, October, November, and December, 2020; January, February, March, April, and May, 2021.

Accordingly, the State alleged that Ramirez failed to report during all twelve months of 2020 and the first five months of 2021.

## II. Evidence

A court officer for the trial court testified that she was in the courtroom when Ramirez pleaded guilty on July 15, 2019. She said that she had provided Ramirez with his conditions of probation and that another officer had reviewed them with Ramirez.

The probation officer testified that generally once a defendant completed his intake, which would occur on the same day that he was placed on community supervision, the paperwork would then be sent to the probation officer to whom the defendant had been assigned, which, in Ramirez's case, was her. Regarding the intake process, the probation officer engaged in the following exchange:

Q. And so when [a defendant] does the intake, what kind of information is reviewed with him?

A. The conditions of probation are gone over with him, all of the requirements, basically everything that he agreed to at the plea is reiterated, and he signs the intake paperwork.

Q. And do you have documentation showing that [Ramirez] completed the intake successfully, it was explained to him, and he signed off on those documents?

A. Yes.

A few days after being placed on community supervision, on July 26, 2019, Ramirez reported to jail to serve 45 days' confinement as one of his conditions of

4

community supervision. Once in the county jail, however, ICE[5] placed a detainer on Ramirez and transferred him to a Dallas facility for an immigration hearing. On December 7, 2019, Ramirez was deported to Mexico.

After being deported, Ramirez fell "off the grid." The probation department had no contact with him.

Slightly over a year and seven months after Ramirez was deported, the State filed a motion to revoke Ramirez's community supervision. Within that motion, the State alleged, among other allegations, that Ramirez had violated condition (d) of his community supervision by not reporting to his probation officer for all twelve months of 2020 and for the first five months of 2021. On the same date—July 15, 2021—the trial court signed an order directing the issuance of a capias for Ramirez's arrest.

Thereafter, Ramirez was arrested on January 7, 2022. At the revocation hearing, Ramirez testified that he had returned to the United States before Christmas in December 2021. Ramirez's arrest in January 2022, according to the probation officer, was the first knowledge that the probation department had of his whereabouts since his deportation in December 2019.

Regarding reporting, the probation officer testified that Ramirez had never reported—not while he was in custody awaiting deportation, not after he was deported, and not since his January 2022 arrest:

---

[5]United States Immigration and Customs Enforcement.

Q. Subsequent to the plea on July 15th of 2019, did the defendant report to the Parker County probation office?

A. He did not report for his monthly visits. He reported the day of probation.

Q. Okay. Perfect clarification. After his initial intake, did he ever report to you between the intake date and today?

A. No.

Q. Okay. And when I say "ever report," did he report in person?

A. No.

Q. Did he report by mail?

A. No.

Q. Did he Zoom you?

A. No.

Q. Because that's a thing, right?

A. Right.

Q. E-mail?

A. No.

Q. Phone call?

A. No.

Q. Okay. So there has been no contact in any form or fashion with Mr. Ramirez since his intake with probation?

A. That's correct.

Neither the probation department nor the State in its motion faulted Ramirez for not reporting while he was in custody awaiting deportation. The alleged violations began in January 2020, after his deportation.

Regarding Ramirez's ability to comply with condition (d) after his deportation, the probation officer and defense counsel engaged in the following exchange:

Q. Now, obviously, he wasn't able to report or pay any money because he was deported, correct?

A. Yes.

Q. In other words, he never was given the opportunity to perform probation?

A. Sure, that would be fair to say.

Q. [The probation department] doesn't know how he would do [on community supervision], correct?

A. Correct.

For his part, Ramirez maintained that he did not know whether he was still on probation when he returned and that he did not know how to go about asking. But the probation officer testified that before Ramirez's deportation, she was in contact with Ramirez's nephew, who had initially reported with Ramirez and had translated everything for him. The nephew told her that he was in contact with Ramirez, so she instructed the nephew to tell Ramirez that if Ramirez were ever released, he still had to comply with his probation obligations. And as for his alleged inability to contact the probation department, Ramirez admitted that he had a phone, that he had access

7

to the internet, and that he knew how to use Google. The probation officer testified that any form of contact would have sufficed:

> Q. And you have a copy of what Mr. Ramirez signed with [the court officer] in July 2019 when he was given a copy of [conditions of community supervision], right?
>
> A. Yes.
>
> Q. So since he got out of court, since he went to your office and then left, between the 15th and the 26th [of July 2019] when he reported to jail, he could have put that with all his super important stuff, right?
>
> A. Yes.
>
> Q. Okay. So regardless of whether -- when he goes to Mexico where, last I checked, they actually still have Google, he could have had this or any family member tell him the phone number to contact you, the name of his probation officer, all those things that you provided him when he left probation, right?
>
> A. Yes.
>
> Q. But you didn't hear from him, did you?
>
> A. No.
>
> Q. Would it matter, especially since you have documentation and have talked to his direct relative who was the liaison, would it have mattered if Mr. Ramirez would have called you on the phone and said, . . . ["Y]ou know I've been deported, I'm in Mexico, what do I need to do?["]
>
> A. Yes. That --
>
> Q. You still would have taken the call, right?
>
> A. Right.

Q. If he would have e-mailed you, . . . ["]I'm coming back; I know, you know, I've been out of pocket, not by -- voluntarily, but I'm coming back illegally, do I still need to come in[?"] [Y]ou would have responded to that e-mail, wouldn't you?

A. Yes.

Q. If he would have sent you something in the old-fashioned mail that was not a reporting form, would you have accepted that from him?

A. Yes.

Ramirez testified that once he had returned from Mexico in December 2021, he had insufficient time to contact the probation department: "I do understand it was my responsibility to go and let them know, but there were too few days."

### III. Standard of Review

In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

## IV. Discussion

The evidence showed that, except for his intake on July 15, 2019, Ramirez never reported to the probation officer as required by condition (d) of his community supervision. This necessarily included the months alleged in the motion to revoke—all twelve months of 2020 and the first five months of 2021.

Although the probation officer acknowledged that Ramirez could not report while deported, contextually, she appears to have meant that he could not report in person, as she testified to other acceptable forms of contact. Condition (d) of Ramirez's community supervision required him to report; it did not require him to report in person. *See Jones v. State*, 176 S.W.3d 47, 51 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("A trial court may provide the community supervision officer with some discretion concerning the particular terms of community supervision."). The evidence established that Ramirez had the ability to report by other means, such as by telephone, email, and mail. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court could have construed, and apparently did construe, the probation officer's testimony to mean that Ramirez could not report in person but could have reported in some other manner. As the factfinder, the trial court could choose to believe all, some, or none of the probation officer's testimony. *Hubych v. State*, No. 10-22-00118-CR, 2023 WL 2528612, at *3 (Tex. App.—Waco Mar. 15, 2023, no pet.) (mem. op., not designated for publication).

10

In the same manner, the trial court could have disbelieved Ramirez's testimony that he was unsure about his responsibilities and that he did not know how to contact his probation officer. *See id.* The hearing testimony showed that when Ramirez was placed on community supervision, court personnel explained his obligations to him and that, at least while he was in custody before being deported, the probation officer was communicating with Ramirez through Ramirez's nephew, who purportedly had remained in contact with Ramirez.

Regarding Ramirez's assertion that he had insufficient time to report once he returned from Mexico, the State was not seeking to revoke his community supervision for not reporting upon his return in December 2021 until his arrest in January 2022. By the time of Ramirez's revocation hearing in March 2022, he had been on community supervision for thirty-two months and had never reported after his initial intake. A rational factfinder could have reasonably dismissed his explanation that he lacked sufficient time to report.

When confronted with a comparable issue in which a defendant had been deported shortly after being placed on community supervision and who had thereafter failed to report, the Amarillo Court of Appeals rejected the defendant's argument that deportation prevented him from reporting:

> The record indicates that appellant made no effort to report in person, by phone, or by mail. To the contrary, the evidence establishes that, during the ten-year probationary period, appellant never reported in any manner to the department as was required and as he agreed. This evidence is sufficient to establish by a preponderance of the evidence

11

that appellant violated a term of his community supervision and supports the trial court's decision to proceed to adjudication. *See Hacker*, 389 S.W.3d at 864–65. The trial court did not abuse its discretion by so doing on this record.

*Garcia v. State*, No. 07-15-00268-CR, 2016 WL 3391811, at *2 (Tex. App.—Amarillo June 17, 2016, pet. ref'd) (mem. op., not designated for publication).

Accordingly, we hold that the trial court did not abuse its discretion by finding that Ramirez violated condition (d) by not reporting to his probation officer for the entirety of 2020 and the first five months of 2021. *See Bryant*, 391 S.W.3d at 93; *Rickels*, 202 S.W.3d at 763–64. Because the violation of one condition is sufficient to revoke community supervision, we need not address whether the trial court properly revoked Ramirez's community supervision for violating other conditions. *See Bryant*, 391 S.W.3d at 93; *Rickels*, 202 S.W.3d at 763–64; *see also Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980) ("We need not address appellant's other contentions since one sufficient ground for revocation will support the court's order to revoke probation."); *Howard v. State*, No. 07-13-00026-CR, 2013 WL 5872936, at *2 (Tex. App.—Amarillo Oct. 29, 2013, pet. ref'd) (mem. op., not designated for publication); *Johnson v. State*, 638 S.W.2d 206, 208 (Tex. App.—Fort Worth 1982, no pet.).

We overrule Ramirez's sole issue.

12

## V.  Conclusion

Having overruled Ramirez's sole issue, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2 (b)

Delivered:  August 10, 2023

13