# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00242-CR

**Larry Duarte, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. 0992326, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

A jury found appellant Larry Duarte guilty of intentionally or knowingly inflicting serious bodily injury or serious mental deficiency, impairment, or injury to a child. *See* Tex. Penal Code Ann. § 22.04(a)(1), (2) (West Supp. 2000). The jury assessed punishment at imprisonment for life. Appellant contends the evidence is legally and factually insufficient to sustain the guilty verdict and that his videotaped statement to the police should have been suppressed. We will overrule these contentions and affirm.

On January 14, 1999, appellant's wife, Rebecca Duarte, took their two-week-old daughter, Victoria, to her pediatrician's office for a scheduled well-baby checkup. Duarte reported that Victoria had been coughing and wheezing, and a chest X-ray revealed that the child had pneumonia. The physician's assistant who conducted the examination also noticed bruises near the child's left eye and ear which caused him to be concerned that she had been mishandled.

Victoria was ordered hospitalized for treatment of the pneumonia and for further evaluation of her head injuries.

Tests at the hospital disclosed that Victoria had a linear skull fracture on the left side of her cranium with related bleeding between the skull and brain. Doctors also found a metaphyseal fracture of the left leg. Doctors testified that such a fracture results when the leg is violently twisted and is "highly specific for child abuse."

When interviewed at the hospital about Victoria's injuries, Rebecca Duarte and appellant reported that Victoria and her eleven-month-old brother, Frank, had been left with appellant while Rebecca and her parents went shopping. During this time, appellant and the children napped on a mattress on the floor. Appellant said that when he awakened, Frank had turned on the mattress so that his feet were by Victoria's head. Appellant said that he saw Frank kick Victoria's head. Doctors testified that an eleven-month-old child could not have kicked with sufficient force to fracture Victoria's skull. They hypothesized that Victoria had been picked up by the leg and shaken, causing the leg fracture. At some point, her head had struck a hard surface, causing the skull fracture and bruising.

Detective Brett Wilson interviewed appellant and his wife at the child protective services office. Appellant repeated his story about Frank kicking Victoria. When Wilson said that he did not believe this, appellant told the officer that he had accidentally dropped Victoria. Wilson told appellant that this would not explain the seriousness of the child's injuries. Appellant then explained that after he dropped Victoria, she would not stop crying. Appellant threw her

onto the bed, then picked her up and threw her onto the floor. Appellant admitted knowing that the child was seriously injured.

In his points of error challenging the sufficiency of the evidence, appellant does not deny that he was shown to have intentionally or knowingly injured his infant daughter. Appellant contends only that the State failed to prove that the injuries were of the degree necessary to support a first degree felony conviction. *See id.* § 22.04(e). He contends in two points of error that the evidence is legally and factually insufficient to support a finding that Victoria suffered serious mental deficiency, impairment, or injury. *See id.* § 22.04(a)(2). In a third point, appellant contends the evidence is factually insufficient to support a finding that the child received a serious bodily injury. *See id.* § 22.04(a)(1).

A factual sufficiency challenge presupposes that the evidence is legally sufficient to sustain the verdict. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.–Austin 1992, pet. ref'd untimely filed). Because appellant does not challenge the legal sufficiency of the evidence to support a finding that he caused serious bodily injury to the child, and because such a finding is alone sufficient to sustain the jury's verdict, we need not address his evidentiary contentions. Points of error one, two, and three are overruled.

A videotape of appellant's interview with Detective Wilson was introduced in evidence over appellant's objection. In points of error four and five, appellant contends the confession was taken in violation of his rights under federal and state law. Specifically, appellant urges that he was not advised of his rights prior to questioning, and as a consequence did not

knowingly and voluntarily waive those rights before making his statement. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (West Supp. 2000). The district court overruled appellant's objection on the ground that he was not in custody when the statement was made.

*Miranda* and article 38.22 apply only to statements resulting from custodial interrogation. *Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex. App.–Austin 1997, no pet.). Whether a statement is the product of custodial interrogation must be determined on an ad hoc basis after considering all of the objective circumstances. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Id.* at 254 (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). The district court's conclusion that appellant was not in custody when he made the statement presents a mixed question of law and fact that we review *de novo*. *See Hernandez v. State*, 957 S.W.2d 851, 852 (Tex. Crim. App. 1998).

Wilson testified that after being assigned to investigate the Duarte matter as a possible child abuse case, he went to the child protective services office to speak to the case worker. Appellant and his wife came to the office while Wilson was there to bring toys and clothes to their two children, who had been taken from their home the previous day. Wilson spoke privately to each. He told appellant when his interview began that he was not under arrest and was free to go at any time. Appellant indicated that he understood. In the course of the

subsequent interview, appellant made the statements previously discussed. Appellant then left the office, and was not arrested until three days later.

Appellant concedes that he was not in custody when the interview began. He argues, however, that custody began when he admitted to Wilson that he had dropped the baby. Appellant urges that his situation was like that of the defendant in *Dowthitt*, in which the court of criminal appeals concluded that a suspect's custody began when he told officers during a voluntary station-house interview that he had been present when the murders under investigation had been committed. *See Dowthitt*, 931 S.W.2d at 256-57. The court wrote:

> While [the defendant] did not admit to committing the offenses, his admission that he was present during the murders was incriminating, and a reasonable person would have realized the incriminating nature of the admission. Given the length of the interrogation, the existence of factors involving the exercise of police control over [the defendant] (accompanying [defendant] at restroom breaks, ignoring requests to see his wife), and [the defendant's] damaging admission establishing probable cause to arrest, we believe that "custody" began after [the defendant] admitted to his presence during the murders.

*Id.* at 257.

While *Dowthitt* shows that a crucial admission may turn a noncustodial encounter into a custodial one, it is clear that the admission was not the only factor considered by the court. Dowthitt's admission to being present at the murders was made at 1:00 a.m., after twelve hours of more-or-less continuous questioning at the police station. *See id.* at 256. Officers ignored two requests by Dowthitt to see his wife. *See id.* Officers accompanied Dowthitt during restroom breaks, and it was clear at least six hours before the admission that Dowthitt was a suspect. *See*

5

*id.* As the quoted passage makes clear, all of these circumstances contributed to the conclusion that custody began when Dowthitt made his crucial admission.

Wilson's interview with appellant did not take place at the police station, but at the offices of child protective services. Appellant was told repeatedly during the interview that he was not under arrest and could leave at any time. Appellant admitted dropping Victoria thirty minutes after the interview began. This admission may have caused Wilson to focus on appellant as a suspect, or even given Wilson probable cause to arrest, but there is no showing that the officer's subjective intent or belief was conveyed to appellant. *See Dowthitt*, 931 S.W.2d at 254 (custody determination based entirely on objective circumstances; subjective intent of police irrelevant except to extent it may be manifested in words or actions). While it is apparent from watching the videotape that appellant understood he was a suspect in the ongoing investigation, this is not in itself determinative of the custody issue. *See Rodriguez*, 939 S.W.2d at 217. Appellant left Wilson's office fifty minutes after the interview began and went home with his wife. Considering all these circumstances, we conclude that a reasonable person in appellant's position would not have believed that his freedom of movement had been restrained to the degree associated with a formal arrest.

Because appellant was not in custody, it was not necessary for Wilson to advise him of his rights before questioning him. *Miranda* and article 38.22 were not violated. Points of error four and five are overruled.

6

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed:   December 21, 2000

Do Not Publish

7