Sandra Garcia **CERDA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–95–450–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 6, 2000.

Jake Perret, Houston, for Appellant.

Robert E. Bell, Crim. Dist. Atty., Edna, Jim Vollers, Austin, for State.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## O P I N I O N

RODRIGUEZ, Justice.

Appellant, Sandra Garcia Cerda, was convicted for possession of marijuana and sentenced to twenty years confinement. On appeal, appellant raised six points of error. We reversed and remanded after finding that the trial court abused its discretion in denying appellant's motion to suppress. *See Cerda v. State,* 951 S.W.2d 119, 121–22 (Tex.App.—Corpus Christi 1997), *vacated,* 975 S.W.2d 635 (Tex.Crim. App.1998). We determined that the evidence was illegally seized because the officer conducted a warrantless search of appellant's automobile without the existence of exigent circumstances. *See id.* at 121–,22. We based our opinion largely upon *State v. Guzman,* 942 S.W.2d 41, 45 (Tex. App.—Corpus Christi 1997), *rev'd,* 959 S.W.2d 631 (Tex.Crim.App.1998), in which we held there must be probable cause and exigent circumstances to justify a warrantless search under the automobile exception. Subsequently, the Texas Court of Criminal Appeals reversed *Guzman,* holding that "the automobile exception to the Fourth Amendment of the United States Constitution does not require the existence of exigent circumstances in addition to probable cause." *State v. Guzman,* 959 S.W.2d 631, 634 (Tex.Crim.App.1998). As a result, the court of criminal appeals reversed and remanded this cause for review consistent with its holding in *Guzman.* We affirm.

Officer Frank Rios of the Department of Public Safety stopped appellant as she was traveling northbound on Highway 59 in a van. Officer Rios testified that he made the traffic stop after clocking appellant and another vehicle traveling in excess of the legal speed limit. Officer Rios testified that he asked appellant for consent to search the vehicle, to which appellant responded, "Oh, okay." Officer Rios opened the passenger door and observed the air conditioning was not activated. He then turned on the air conditioning and noticed that air was not blowing from the front or the dash. As a result, he went around to the passenger side, looked under the dash, and found a large box, which he considered larger than normal for an air conditioning

system. He also observed mud over the screws holding the vent cover in place. Officer Rios testified that mud is used to disguise marks made by screwdrivers.

At this point, appellant agreed to follow Officer Rios in her van to a garage. Officer Rios testified he asked for appellant's specific consent to search the dash while at the garage. Moreover, Officer Rios obtained appellant's written consent to search the vehicle "including the containers and contents located therein ' & contents.'" After removing the dash cover and an eight inch square piece of fiberglass, Officer Rios found twenty four bundles of marijuana. Officer Rios placed appellant under arrest.

On October 3, 1994, while out on bond, appellant appeared before a grand jury. Robert Bell, a county criminal district attorney, began the grand jury proceeding by informing appellant that she was the focus of an investigation by the grand jury for possession of marijuana, and advised appellant of her right not to testify to anything that might incriminate her and her right to consult with counsel. Appellant waived her rights verbally and in writing. The grand jury subsequently indicted appellant for possession of marijuana. Appellant filed a motion to suppress her consent to search the vehicle, which the trial court denied. Appellant also filed a motion to suppress her grand jury testimony, alleging it was given involuntarily and in violation of her privilege against self-incrimination. After a hearing, the trial court denied the motion, finding the grand jury statement was made freely and voluntarily.

 In her sixth point of error, appellant complains the trial court erred by denying her motion to suppress evidence of her consent to search the automobile because such consent was given involuntarily. A motion to suppress is reviewed by an abuse of discretion standard. *See State v. Ballard,* 987 S.W.2d 889, 891 (Tex. Crim.App.1999). The trial judge "is the sole trier of fact and judge of the credibili-

ty of the witnesses and the weight to be given their testimony." *Id.; see also Johnson v. State,* 978 S.W.2d 703, 705 (Tex.App.—Corpus Christi 1998, no pet.). We view the evidence from a suppression hearing in a light most favorable to the trial court's ruling. *See Ballard,* 987 S.W.2d at 891.

 Voluntariness of consent to search is a question of fact determined from the totality of the circumstances. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Rangel v. State,* 972 S.W.2d 827, 832 (Tex.App.—Corpus Christi 1998, pet. ref'd). The State has the burden to prove the consent was voluntary by clear and convincing evidence. *See State v. Ibarra,* 953 S.W.2d 242, 245 (Tex.Crim.App.1997); *Rangel,* 972 S.W.2d at 832. In doing so, the State must show the consent was positive and unequivocal, and not the result of duress or coercion. *See Erdman v. State,* 861 S.W.2d 890, 895 (Tex.Crim.App.1993).

In this case, Officer Rios testified that he received verbal permission from appellant to search the automobile. He further testified that when he asks for permission to search a vehicle, he always informs the individual of her legal right to refuse consent. Officer Rios testified he gave and read to appellant a written consent form, which she signed. The consent form states:

> I understand that I have the right to refuse consent to the search described above and to refuse to sign this form. I further state that no promises, threats, force or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form.

Officer Rios also testified that when he asked appellant if she understood the consent form, she responded affirmatively.

Appellant testified that Officer Rios informed her that he would obtain a warrant to search her vehicle regardless of whether

she signed the consent form. Moreover, appellant answered affirmatively when asked if the threat to obtain a search warrant impacted her signing the consent to search form. However, appellant also stated that she gave the officer verbal consent without him making any threat to obtain a warrant.

Officer Rios stated that after he conducted his initial search and asked appellant to follow him to the garage, appellant was not free to leave. However, Officer Rios also testified that if appellant had withdrawn her consent, and he did not have enough probable cause, he would have let her go. Officer Rios denied making any threat that he would obtain a search warrant.

Considering all of the evidence, the trial court was entitled to accept Officer Rios's testimony and determine that appellant voluntarily consented to the search of the automobile.

■■■ Appellant also complains that Officer Rios's search underneath the dash cover of the automobile exceeded the scope of her consent. The scope of a search is limited by the particular consent given. *See Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). A search conducted with consent must be objectively reasonable in scope. *See id.* In the present case, the written consent form authorizes a search of the automobile, "including containers and contents therein ' & contents.'" Officer Rios testified that he obtained specific consent to search the dash. During the motion to suppress hearing, appellant denied giving specific consent for Officer Rios to search the dash. As the trial court is the sole trier of fact in a motion to suppress, we will not disturb the court's ruling on appeal. Appellant's sixth point of error is overruled.

■■ Appellant's fourth and fifth points of error concern her grand jury testimony which was admitted into evidence. We shall first address appellant's fifth

point of error, wherein she complains the trial court erred in failing to enter findings of fact and conclusions of law regarding the voluntariness of appellant's testimony to the grand jury pursuant to article 38.22, section 6 of the Texas Code of Criminal Procedure. This section of article 38.22 compels the trial court to make an independent finding "as to whether the statement was made under voluntary conditions," and requires the court to file "specific findings of fact upon which its conclusion was based." TEX. CODE CRIM. PROC. ANN. art. 38.22, § .6 (Vernon Supp.1999).

■■ Generally, an appellate court must abate an appeal to a trial court which has failed to make findings of fact and conclusions of law regarding the voluntariness of a confession. *See Garza v. State*, 915 S.W.2d 204, 211 (Tex.App.—Corpus Christi 1996, pet. ref'd). Although the language of article 38.22, section 6 indicates findings are required "[i]n all cases where a question is raised as to the voluntariness of a statement of an accused," the Texas Court of Criminal Appeals and this Court have held that no findings of fact or conclusions of law are necessary when a statement does not arise from a custodial interrogation. *See Wicker v. State*, 740 S.W.2d 779, 783–84 (Tex.Crim.App.1987); *Garza*, 915 S.W.2d at 211; *see also White v. State*, 874 S.W.2d 229, 236 (Tex.App.—Houston [14th Dist.] 1994), pet. dism'd, 890 S.W.2d 69 (Tex.Crim.App.1994). Accordingly, we must determine whether appellant's grand jury statements were made during a custodial interrogation.

■■■ A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Ruth v. State*, 645 S.W.2d 432, 435 (Tex.Crim.App. 1979). Determining whether an individual was in custody at the time of interrogation

involves an examination of numerous factors, including whether the person was the focus of the investigation; the subjective intent of the law enforcement officials; and the subjective belief of the person regarding whether she was in custody. *See Zavala v. State*, 956 S.W.2d 715, 723 (Tex. App.—Corpus Christi 1997, no pet.); *White v. State*, 931 S.W.2d 736, 741 (Tex. App.—Corpus Christi 1996, pet ref'd). Ultimately, a person is under custodial interrogation if a reasonable person in similar circumstances would believe her freedom of movement was restricted to the level associated with a formal arrest. *See Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim.App.1996) (citation omitted). A formal arrest, though, is not required. *See Zavala*, 956 S.W.2d at 723.

Grand jury questioning usually takes place in a setting wholly different from a custodial interrogation. *See United States v. Flores*, 985 F.2d 770, 777 n. 14 (5th Cir.1993) (citing *United States v. Mandujano*, 425 U.S. 564, 585, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976)). Although the United States Supreme Court has never determined whether the questioning of a grand jury witness constitutes a custodial interrogation, *see United States v. Myers*, 123 F.3d 350, 360 (6th Cir.1997) (citing *United States v. Washington*, 431 U.S. 181, 186, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977)), it has refused to extend the requirements of *Miranda* to grand jury questioning. *See Mandujano*, 425 U.S. 564, 585, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). In *Mandujano*, the Court explained:

> *Miranda* addressed extrajudicial confessions or admissions procured in a hostile, unfamiliar environment which lacked procedural safeguards. The decision expressly rested on the privilege against self-incrimination; the prescribed warnings sought to negate the "compulsion" thought to be inherent in a police station interrogation. But the *Miranda* Court simply did not perceive judicial inquiries and custodial interrogations as equivalents: "[T]he compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery."

> The Court thus recognized that many official investigations such as grand jury questioning, take place in a setting wholly different from custodial police interrogation. Indeed, the Court's opinion reveals a focus on what was seen by the Court as police "coercion" derived from "factual studies [relating to] police violence and the 'third degree' . . . physical brutality—beating, hanging, whipping—and to sustained and protracted questioning incommunicado in order to extort confessions. . . ."

> To extend these concepts to questioning before a grand jury inquiry into criminal activity under the guidance of a judge is an extravagant expansion never remotely contemplated by this Court in *Miranda*.

*Mandujano*, 425 U.S. at 580, 96 S.Ct. 1768 (citations omitted). Thus, the Court emphasized the distinction between custodial interrogations, on the one hand, and judicial inquiries, which generally take place in less coercive settings. *See id.*

In this case, appellant was informed that she was the focus of the investigation by the grand jury for possession of marijuana. The prosecutor did not testify whether he considered the questioning to be a custodial interrogation. Prior to the questioning, the prosecutor informed appellant that she did not have to testify. He also explained that appellant had the right to stop the questioning and leave the room if she felt answering the questions might incriminate her. Appellant was also advised of her right to counsel. When asked if she understood the rights and warnings, appellant responded affirmatively. There is no evidence that appellant was not free to leave or that she was constrained in any manner.

During the motion to suppress hearing, appellant testified she did not feel free to leave the grand jury proceeding. She also testified she went before the grand jury because her attorney told her she had an appointment with the grand jury. She said that if her attorney had told her she did not have to go, she would not have gone. On the other hand, when asked whether she "agreed to testify before the grand jury voluntarily and not under any threats or compulsion whatsoever[,]" appellant responded, "After I signed it, yes."

Although the record does not contain any summons for appellant to appear before the grand jury, appellant's written waiver of her rights before the grand jury indicates she was summoned to appear. Appellant was on bond when she testified before the grand jury.

This Court has held that questioning by a criminal district attorney of an individual who was not under arrest and was free to leave, did not amount to a custodial interrogation. *See White*, 931 S.W.2d at 738–42. Considering appellant appeared before the grand jury while on bond, was never confined nor told she could not leave, and testified that she appeared before the grand jury voluntarily, a reasonable person in her circumstances could believe her freedom of movement was not restricted to the level of a formal arrest. As appellant was not in custody under these circumstances during the grand jury proceeding, no findings of fact or conclusions of law were necessary. *See Garza*, 915 S.W.2d at 211. Appellant's fifth point of error is overruled.

■ By her fourth point of error, appellant contends the trial court erroneously denied her motion to suppress her grand jury testimony because it was given involuntarily and in violation of her privilege against self-incrimination. Although appellant concedes the prosecutor advised her of her privilege against self-incrimination at the commencement of the grand jury questioning and that she waived her rights orally and in writing, she claims her

privilege was violated after she subsequently invoked the privilege. Appellant directs this Court to the following colloquy between herself and Robert Bell, the county criminal district attorney:

BELL: I want to go to ... August the 4th of 1994, the Trooper has been in here and testified that he stopped your vehicle for radar at 62 miles an hour and that there was another vehicle that was right by your vehicle.

BELL: Had you been ... been stopped earlier in the day or her?

CERDA: She ... yeah, she had been stopped for her windows.

BELL: Was your mother there to distract the officers?

CERDA: She wasn't there to distract the officers. She wasn't trying ... she wasn't trying to be a clown or anything. She wasn't trying to be stopped by a cop.

BELL: What was her job?

CERDA: Just to drive back home.

BELL: She didn't know the dope was there?

CERDA: Huh?

BELL: Huh? You don't understand the question

(Pause)

Do you understand the question?

CERDA: Yes.

BELL: Did she know the dope was there?

CERDA: Do I have to answer the question?

BELL: It doesn't incriminate you, it incriminates her. Yes. You've already waived your right to testify. Did she know the dope was there?

CERDA: Yes.

Appellant contends she invoked her privilege against self-incrimination by asking Bell if she had to answer the question. That privilege, appellant asserts, was violated when Bell informed her she had to

answer and erroneously stated that the question did not incriminate her. Additionally, appellant urges that the prosecutor's repeated reminders of the penalty for perjury rendered her grand jury statement involuntary.

▮▮▮ Although voluntariness is not an issue if the speaker is not in custody, *see e.g., Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex.App.—Austin 1997, no pet.); *Garza v. State*, 915 S.W.2d 204, 211 (Tex.App.—Corpus Christi 1996, pet. ref'd), the Fifth Amendment privilege against self-incrimination extends to grand jury testimony.[1] *See United States v. Williams*, 504 U.S. 36, 49, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Accordingly, we only review appellant's contention that her grand jury testimony was given in violation of her privilege against self-incrimination.

▮▮▮ The standard by which voluntariness of a confession or an admission is to be determined is equivalent to that which applies to the Fifth Amendment privilege against self-incrimination. *See Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 42 L.Ed. 568 (1897). That is, a confession or an admission must not be extracted by threat or violence, nor obtained by any direct or implied promise, nor by the exertion of any improper influence. *See Roberts v. State*, 545 S.W.2d 157, 160–61 (Tex.Crim.App.1977); *Tovar v. State*, 709 S.W.2d 25, 27 (Tex.App.—Corpus Christi 1986, no pet.). In determining whether a statement is compelled within the meaning of the Fifth Amendment, the trial court considers the totality of the circumstances. *See United States v.*

*Washington*, 431 U.S. 181, 188, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *Penry v. State*, 903 S.W.2d 715, 744 (Tex.Crim.App. 1995) (citing *Griffin v. State*, 765 S.W.2d 422, 429 (Tex.Crim.App.1989)). We do not disturb the trial court's findings absent a clear abuse of discretion. *See Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App. 1990).

In the present case, appellant was advised of her rights before the grand jury, including the right to refuse to answer any incriminating question, in accordance with article 20.17(c) of the Texas Code of Criminal Procedure. Appellant waived those rights verbally and in writing. Following the colloquy between the prosecutor and appellant regarding appellant's mother's knowledge of the marijuana, without objection or further comment regarding incrimination, appellant testified at length regarding the marijuana and her mother's and her own role in transporting the marijuana. The prosecutor testified at the motion to suppress hearing that he asked appellant about the penalty for perjury five times during the grand jury questioning.

The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony in a motion to suppress. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Considering the totality of the circumstances, and viewing the evidence in a light most favorable to the trial court's ruling, we are unable to say the trial court abused its discretion in denying her motion to suppress her grand jury testimony. Appellant's fourth point of error is overruled.

▮▮▮ In her first point of error, appellant complains that the trial court errone-

---

1. There is, however, no absolute right to remain silent in a grand jury proceeding; rather, the privilege against self-incrimination extends only to those questions requiring a truthful response which would tend to incriminate the grand jury witness. *See Andino v. State*, 645 S.W.2d 615, 619 (Tex.App.—Austin 1983, no writ). Thus, the Fifth Amendment privilege against self-incrimination is applica-

ble to grand jury proceedings inasmuch as it prevents the grand jury from forcing " 'a witness to answer questions in violation of [the Fifth Amendment's] constitutional guarantee' against self-incrimination." *United States v. Williams*, 504 U.S. 36, 49, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (quoting *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)).

ously overruled her motion to suppress the grand jury testimony because of the State's failure to provide her with a recording of her testimony twenty days before trial, as she contends is required by article 38.22, section 3(a)(5). That provision provides:

> Sec. 3 (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
>
> (5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(5) (Vernon Supp.1999). This provision must be read with the entirety of article 38.22. Specifically, section 5 of article 38.22 provides that "[n]othing in this article precludes the admission of a statement made by the accused ... before the grand jury...." TEX.CODE CRIM. PROC. art. 38.22, § 5 (Vernon Supp.1999). Thus, the requirements of section 3(a)(5) are inapplicable to the grand jury statement. Moreover, this Court has recognized that admissions of the accused at a grand jury proceeding are generally admissible against the accused, so long as the accused is advised of his privilege against self-incrimination. *See Lozada–Mendoza v. State*, 951 S.W.2d 39, 43 (Tex.App.—Corpus Christi 1997, no pet.) (citing *Fuller v. State*, 827 S.W.2d 919, 928 (Tex.Crim.App. 1992)). As such, the trial court did not abuse its discretion in denying appellant's motion to suppress the grand jury testimony on the basis that she was not provided with a recording twenty days before trial. Appellant's first point of error is overruled.

By her second point of error, appellant contends the trial court erred by overruling her objection to the State's jury argument during the punishment stage of the trial. Appellant complains the following argument by the State was manifestly improper and inflammatory:

> MR. BELL [Prosecutor]: * * * * Let me tell you this last thing, and I'll sit down. every day I have them come to me. I feel like Monte Hall, "Let's Make A Deal."
>
> What will you give for this murder?
>
> What will you give for this murder?
>
> What will you give for 30 pounds?
>
> And let me tell you this, I try to do what's right. I don't know. Maybe I do. Maybe I don't, but I'll tell you this; long after the facts of this case have faded from your memory—and they will—and long after you've forgotten me and Honorable Judge Pat Kelly, Defense Counsel and this Defendant—and you will—you'll remember one thing, and that's your verdict. And I'm asking you to be comfortable with that when drug dealing is at whatever level it is 20 years from now.
>
> And I'll tell you this. The one thing I will do; and I promise is, I'll listen to you. You are my voice. You're my sounding board. You think drug dealers ought to get probation, give it to her, and I'll deal accordingly. On the other hand, if you believe, as I think this evidence shows, you should respond with strong penitentiary time; and I will respond accordingly.
>
> MR. HURBURT [Defense Counsel]: Judge, I object. I believe that's way outside the record, improper argument, telling this jury that he's going to start offering whatever they decide to give in this case. And that's totally outside the record and way improper argument and I would ask for a mistrial.
>
> THE COURT: Overruled, denied.
>
> MR. BELL: I think it's appropriate, the message I think you ought to send, what I'm asking this community to stand up and be counted for. It won't be easy. I understand. 20 years in prison, $10,000 fine. She's earned it. You're not doing

anything to her. She chooses to be a drug dealer for greed....

 Appellant contends the prosecutor threatened the jury with the prospect that he would base all future punishment recommendations on their verdict. Construing the argument in its entirety, however, it appears the prosecutor's argument was actually a plea for law enforcement, which is a proper topic for jury argument. *See Harris v. State,* 827 S.W.2d 949, 963 (Tex. Crim.App.1992). "A proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of crime in general." *Borjan v. State,* 787 S.W.2d 53, 55 (Tex.Crim.App.1990). This Court has upheld arguments that probation would be an inappropriate penalty for a certain offense. *See Lugo v. State,* 732 S.W.2d 662, 664 (Tex.App.—Corpus Christi 1987, no pet.). Because the prosecutor's argument amounts to a plea for law enforcement, the trial court did not err in overruling appellant's objection. Appellant's second point of error is overruled.

 By her third point of error, appellant complains the trial court erred in failing to submit an instruction regarding the lawfulness of Officer Rio's stop of appellant. Appellant submitted a handwritten instruction regarding the lawfulness of the traffic stop, which the court refused to include in the charge. A trial court is required to submit an instruction to the jury that it shall disregard illegally obtained evidence only if there is a fact issue as to the lawfulness of the seizure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Bell v. State,* 938 S.W.2d 35, 48 (Tex.Crim. App.1996). In the present case, Officer Rios testified that he stopped appellant for driving in excess of the legal speed limit. There is no contradictory testimony in the record. Appellant argues she raised a fact issue by impeaching Officer Rios as to why he stopped the driver of the gray vehicle. Such collateral impeachment does not create an issue of fact as to the lawfulness of appellant's arrest. Thus, the trial court

did not err in refusing to submit the requested instruction. Appellant's third point of error is overruled.

The judgment of the trial court is AFFIRMED.