NUMBER 13-00-235-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

CORPUS CHRISTI

___________________________________________________________________

 

ROGELIO CASTILLO RODRIGUEZ,                                               Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                  Appellee.

____________________________________________________________________

 

On appeal from the County Court at
Law No. 1

of Calhoun County, Texas.

____________________________________________________________________

 

O P I N I O N

 

Before Justices Dorsey, Hinojosa,
and Rodriguez

Opinion by Justice Hinojosa

 








A jury found appellant, Rogelio
Castillo Rodriguez, guilty of the offense of possession of more than two, but
less than four, ounces of marihuana,[1]
and the trial court assessed his punishment at one year in the Calhoun County
Jail, a fine of $4,000, and court costs of $270.25.  In a single issue, appellant contends the trial court Aerred in admitting the marihuana
into evidence over his objection that the State had exceeded the consent to enter
the residence.@[2] 
We affirm. 

                                                     A.  Standard
of Review

The admission or exclusion of
evidence is within the discretion of the trial court.  Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App.
1999).  The issue of whether a consent
search exceeded the scope of the consent given is a mixed question of law and
fact.  Vargas v. State, 18 S.W.3d
247, 253 (Tex. App.BWaco 2000, pet. ref=d).  There is no abuse of discretion merely because the fact finder
believes one version of the facts over another.  See, e.g., Nonn v. State, 13 S.W.2d 434,
441-42 (Tex. App.BCorpus Christi 2000), rev=d on other grounds, 2001 Tex. Crim. App. LEXIS
(April 4, 2001). 

                                                      B.  Consent
Searches      








Both the United States
Constitution and the Texas Constitution guarantee the right of the people to be
secure against unreasonable searches and seizures.  U.S. Const. amend.
IV; Tex. Const. Art. I, ' 9.  It is well-settled under the Fourth and Fourteenth Amendments
that a search without a warrant based on probable cause is per se
unreasonable.[3]  Horton v. California, 496 U.S. 128,
133 n.4 (1990); Kutzner v. State, 994 S.W.2d 180, 186 (Tex. Crim. App.
1999).  However, this concept is subject
to some well-defined exceptions.  Katz
v. United States, 389 U.S. 147, 157 (1967); O=Hara v. State, 27 S.W.3d 548, 550 (Tex. Crim.
App. 2000); Garcia v. State, 887 S.W.2d 846, 852 (Tex. Crim. App. 1994).  One well-established exception to the
warrant requirement covers items in plain view of police officers when the
officers are where they have a right to be. 
See Texas v. Brown, 460 U.S. 738-39 (1983) (explaining that plain
view doctrine is not really exception to warrant requirement because seizure of
property in plain view involves no invasion of privacy and is presumptively
reasonable); Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000);
Martinez v. State, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000).  








Another exception to the warrant
and probable cause requirements is a search that is conducted pursuant to
consent.  Schneckloth v. Bustamante,
412 U.S. 218, 219 (1973); Reasor v. State, 12 S.W.3d 813, 817 (Tex.
Crim. App. 2000); Kutzner, 994 S.W.2d at 186; Garcia, 887 S.W.2d
at 851.  For consent to be a valid
exception to the warrant requirement, it must be voluntary.  Schneckloth, 412 U.S. at 223; Reasor,
12 S.W.3d at 817.  Unlike the United
States Constitution, under which prosecutors must prove by a preponderance of
the evidence that consent to search was freely given, the Texas Constitution
requires the State to prove by clear and convincing evidence that the consent
to search was voluntary.  Reasor,
12 S.W.3d at 818; Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App.
2000); State v. Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997); Cerda
v. State, 10 S.W.3d 748, 751 (Tex. App.BCorpus Christi 2000, no pet.); Harris v. State, 994
S.W.2d 927, 930 (Tex. App.BWaco 1999, pet. ref=d).  In doing so, the State
must show that the consent was positive and unequivocal, and not the result of
duress or coercion.  Carmouche,
10 S.W.3d at 331; Erdman v. State, 861 S.W.2d 890, 895 (Tex. Crim. App.
1993); Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991).[4]

When an individual voluntarily
consents to a search, an officer=s authority to perform the search is not without
limit.  Vargas, 18 S.W.3d at 253;
Harris, 994 S.W.2d at 931.  The
scope of a search is limited by the particular consent given.  Florida v. Jimeno, 500 U.S. 248, 251
(1991); Martinez v. State, 29 S.W.3d 324, 330 (Tex. App.BHouston [14th Dist.] 2000, no
pet.); Cerda, 10 S.W.3d at 751. 
A person is free to place limits on the scope of the consent he
gives.  Jimeno, 500 U.S. at
251-52; see Dubose v. State, 915 S.W.2d 493, 496 (Tex. Crim. App.
1996), overruled on other grounds by Guzman, 955 S.W.2d at 89.  The scope of the consent is further defined
by its expressed object, or in other words, what a reasonable person would have
understood by the exchange between the officer and the person giving consent. Dubose,
915 S.W.2d at 500; Vargas, 18 S.W.3d at 253; Harris, 994 S.W.2d
at 931.








                           C.  Evidence
Regarding the Scope of Consent

The evidence at trial regarding
the events leading up to the consent in question is undisputed.  Several Calhoun County Sheriff=s deputies were on routine patrol
when they spotted a man looking into and possibly trying to enter the window of
appellant=s mobile home.  The man ran when the officers
approached.  The deputies caught him,
then knocked on the door of the mobile home to speak to the occupant.  Appellant and a woman answered the door and
identified the peeper as a neighbor.

At this point, the stories
diverge.  Deputy J. Amador testified
that he asked appellant, first in English and then in Spanish when appellant
did not appear to understand,

if it was okay for us to go inside his residence, check
the windows to make sure everything was okay; make sure nobody else was inside
the house. . . .  At that point Deputy
De la Cruz also asked him the same question [in Spanish], if we could have
permission to go inside to check the house again.  He indicated that, yes, it would be fine; and he gave us verbal
consent to go inside and search the house. . . .  The first thing I did was go into the kitchen area, the window
above the sink, to see if there was any type of forced entry.  None was located. . . .  I noticed the door going back into the back
portion of the trailer house there, and I asked him if anybody was in there,
and he said no.  I asked him if it was
okay for me to go back there and check and he said yes.

 

While checking the bedroom windows, Amador noticed a
triple beam scale on the floor, and an open box of plastic baggies on the
dresser.








Deputy Daigle testified that he
knocked on the door of the mobile home while Amador was putting the peeper in
their patrol car.  Several minutes
passed before appellant opened the door. 
Since he did not speak Spanish very well, he let Amador and Deputy De la
Cruz talk to appellant and the woman. 
He assumed after appellant opened the door for the officers, and Amador
said to Acome on in, that we had been
authorized to go ahead and make entry.@  He heard Amador
ask if he could look in the back part of the mobile home.  Daigle, who is six feet, three inches tall,
was standing in the kitchen next to a small refrigerator, when he noticed an
antique gravy boat on top of the refrigerator. 
Because he and his wife collect antiques and have similar dishes, he
looked at the dish, and looked inside it Ato see if there was any writing.@ 
He saw some rolling papers. 
There were also some plastic baggies on top of the refrigerator, and a
shoe box.  Daigle could see inside the
box; it contained baggies and marihuana seeds and stems.  At this time, Amador said he had found a
triple-beam scale in the bedroom.  The
officers felt they had probable cause to search for marihuana.  Baggies of marihuana were found in a dresser
drawer and in an air conditioner.

Deputy De la Cruz testified that
he asked appellant if he and Daigle could come in.  When Amador arrived, he asked appellant if they could check Athe entire trailer for any forced
entry.@ 


Appellant testified that Amador
asked Aif he could look in the area where
the man was looking,@ and that the man was looking in
the kitchen window.  Amador did not ask
if he could search the whole house. 
Appellant=s understanding was that Amador
was asking for permission to come in to see the inside of the kitchen
window.  Amador barely looked at the
kitchen window, then went into the bathroom. 








The State=s witnesses testified that
appellant gave a general consent to search. 
Appellant testified that the scope of the search was limited to the
kitchen area.  In admitting the evidence,
the trial court obviously believed the officers.  As the trial court is the sole trier of fact, we will not disturb
the court=s ruling on appeal.  Cerda, 10 S.W.3d at 752.  The scope of the consent given is what a
reasonable person would have understood by the exchange between Amador, De la
Cruz, and appellant. The deputies= request to Acheck for forced entry@ was quite broad, and a reasonable person would have
understood that it encompassed a check of every area in the mobile home having
a window or door through which a forced entry might be made.  See Simpson v. State, 29 S.W.3d 324,
330 (Tex. App.BHouston [14th Dist.] 2000, no
pet.); Vargas, 18 S.W.3d at 254 (where no explicit limitation was placed
on a consent to search a car that was given after police asked the driver if he
was carrying drugs or weapons, it was objectively reasonable for the police to
conclude the consent included consent to search containers in the car that
might contain drugs).  While performing the
Acheck@ to which appellant consented, the
officers discovered the marihuana seeds and stems in plain view.[5]  We conclude the trial court did not err in
admitting the marihuana seized in the search of appellant=s home.  Appellant=s sole issue is overruled.

The judgment of the trial court is
affirmed.

 

FEDERICO G. HINOJOSA

Justice

 

 








Do not
publish.  Tex. R. App. P. 47.3.

 

Opinion
delivered and filed this the

9th day
of August, 2001.

 

 

 

 

 

 

 

 

 

                                                                              











[1] See Tex. Health &
Safety Code Ann. ' 481.121(b)(2) (Vernon Supp. 2001).





[2] Appellant filed a motion
to suppress on January 31, 2000. 
Although there are several references in the trial record to a prior
hearing on a motion to suppress, there is no official record that a hearing was
ever requested or held on this motion. 
In its brief the State Arecollect[s]@ that a hearing was held the same day the motion
was filed, and the trial court denied the motion to suppress.  However, the official court reporter has
certified to this Court that she has no record that any such hearing was held
on January 31, 2000, or just prior to the trial date. Appellant does not
mention a motion to suppress in his brief, and frames his issue solely in terms
of his objection at trial to admission of the marihuana into evidence.  





[3] We note that article one,
section nine of the Texas Constitution contains no requirement that a search
and seizure be authorized by a warrant, and that a seizure or search that is
otherwise reasonable will not be found to be in violation of article one,
section nine because it was not authorized by a warrant.  Hulit v. State, 982 S.W.2d 431, 436 (Tex.
Crim. App. 1998)(holding that article one, section nine of the Texas
Constitution does not offer greater protection to the individual than the
Fourth Amendment to the United States Constitution, and that it may offer less
protection); see also Gutierrez v. State, 22 S.W.3d 75, 81 (Tex. App.BCorpus Christi 2000, no
pet.).





[4] We note that appellant
does not contest the voluntariness of the consent to search, he contends only
that the officers exceeded the scope of the consent he gave them to search his
mobile home.





[5] We further note that
when Daigle spotted the marihuana seeds and stems in plain view, he was
standing in the kitchen, the area appellant asserts the officers specifically
asked to search.