COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 


 
 
  
 RAYMON CARRASCO
 SANCHEZ,
  
                             Appellant,
  
 v.
  
 THE STATE OF
 TEXAS,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-01-00491-CR
  
 Appeal from the
  
 385th District Court
  
 of Midland County, Texas 
  
 (TC# CR26,843) 
  
 
 


O P I N I O N

 

Raymon Carrasco Sanchez appeals his
conviction for two counts of indecency with a child by contact, after a jury
trial.  We affirm.

Facts

In the fall of 2000, Raymon Carrasco Sanchez began working as a bus monitor for
the Midland Independent School District (MISD). 
His duties as bus monitor included supervising children during the bus
ride and escorting the children from the bus into their destination building.  While on the bus, it was common for Mr. Sanchez
to entertain the children with games, pictures for coloring, and occasional
treats of candy or gum.  At all times
while Mr. Sanchez was on the bus with the children, a bus driver was present.








On April 4, 2001, KK, a mentally retarded
twelve-year-old girl with the functional level of a six- or seven-year-old
child, rode the bus to a therapy session at the Cerebral Palsy Center (CP
Center) in Midland.  After her session at
the CP Center, the bus then drove her to her father=s workplace Midland Small
Engine.  When KK arrived at the shop, she
told her sixteen-year-old sister and her seventeen-year-old cousin that ARay@ had exposed his Aprivate@ to her and encouraged her to touch
it, which she did.  The sister then told
KK=s father and called KK=s mother, who immediately left her
workplace.  While talking to her mother,
KK mentioned another time that Sanchez had done this.

The following day Kay Therwhanger, a detective with the Midland Police
Department, interviewed both KK and Sanchez. 
During KK=s interview, the girl stated that Sanchez had exposed himself
to her and that she had touched his penis, and he was wearing green underwear
that was exposed through his unzipped pants.








That afternoon Detective Therwhanger and Detective John Beasley went to the MISD bus
barn five miles outside the city of Midland. 
Detective Therwhanger asked Mr. Sanchez to
accompany her and Detective Beasley to the police station for an
interview.  Mr. Sanchez agreed and the
three rode to the station in an unmarked car driven by Detective Beasley.  At the station house, the interview was not
recorded in any manner.   Although
Detective Therwhanger felt she had sufficient
probable cause and considered him a suspect, Sanchez was not arrested at this
time and did not receive Miranda warnings.  Sanchez confirmed to Therwhanger
that he had worn green underwear on the prior day.  Detective Therwhanger
told Sanchez at the end of the interview that he would be arrested a few days
later, which he was.

Sanchez testified he had admitted to
owning a green pair of boxer shorts with white stripes, but not to wearing them
the prior day.  Both during the interview
with Detective Therwhanger and at trial, Mr. Sanchez
denied exposing himself to KK or causing her in any way to touch his penis.

Non-custodial
statement

In his second point of error, Sanchez
claims that statements he made to detectives in a pre-arrest interview were
involuntary and made without proper Miranda warnings during a custodial
interrogation, and thus should have been excluded.  Although there was no formal pretrial
suppression hearing, the trial court determined that the statements were
admissible outside the jury=s presence.  The trial
judge allowed Detective Therwhanger to testify that
Sanchez had told her during their initial interview that he had been wearing
green underwear the day before.








 
The determination of whether a defendant was in custody at the time he
gave statements is a mixed question of law and fact.  Since here the decision does not depend upon
the credibility or demeanor of witnesses before the trial court, we review the
custody question de novo.  In re D.A.R., 73 S.W.3d 505, 509-10 (Tex. App.--El Paso
2002, no pet.); Jeffley v. State, 38
S.W.3d 847, 853 (Tex. App.--Houston [14th Dist.] 2001, pet. ref=d).  Once the custody issue is determined, the
trial judge=s decision to allow testimony into
evidence is reviewed on an abuse of discretion standard.  Green v. State, 934
S.W.2d 92, 101-02 (Tex. Crim. App. 1996).








The voluntariness
of a statement is only an issue if the information was the result of a
custodial investigation.  Rodriguez v. State, 939 S.W.2d 211, 215 (Tex. App.--Austin
1997, no pet.).  Miranda
and Article 38.22 of the Texas Code of Criminal Procedure governing when
statements by the defendant may be used against that defendant at trial apply
only to statements made as a result of custodial interrogation.  Id. at 215; Morris
v. State, 897 S.W.2d 528, 531 (Tex. App.--El Paso 1995, no pet.).  Determining whether an individual is in
custody must be done on a case-by-case basis considering all objective
circumstances.  Dowthitt v. State,
931 S.W.2d 244, 255 (Tex. Crim. App. 1996).  A person is in Acustody@ only if, under the circumstances, a
reasonable person would believe Athat his freedom of movement was
restrained to the degree associated with a formal arrest.@ 
Id. at 254 (citing Stansbury
v. California, 511 U.S. 318, C, 114 S.Ct.
1526, 1528-1530, 128 L.Ed.2d 293, 298-299 (1994)); see also Rodriguez,
939 S.W.2d at 216.  The standard of a Areasonable person@ presupposes an innocent
person.  Dowthitt,
931 S.W.2d at 254 (citing Florida v. Bostick,
501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d
389 (1991)).  Moreover, Aa police officer=s subjective view that the individual
under questioning is a suspect, if undisclosed, does not bear upon the question
whether the individual is in custody . . . .@ 
Stansbury, 511 U.S. at 324, 114 S.Ct. at 1529-30; Dowthitt,
931 S.W.2d at 254. 
This is so even when the police interview a person who is the focus of
the criminal investigation.  Stansbury, 511 U.S. at 324, 114 S.Ct.
at 1529.  However, if the officer=s knowledge or beliefs are conveyed,
they may bear upon the issue of whether or not the person is in custody, but
only to the extent that they would affect how a reasonable person
being questioned would gauge the breadth of his or her Afreedom of action.@ 
Id. at 325, 114 S.Ct. at 1530.  AEven a clear statement from an
officer that the person under interrogation is a prime suspect is not, in
itself, dispositive of the custody issue, for some
suspects are free to come and go until the police decide to make an arrest.@ 
Id.

After Stansbury,
the inquiry into whether someone is in custody relies solely upon an Aobjectively reasonable person under
similar circumstances@ test.[1]  The subjective belief of the suspect or the
undisclosed subjective intent of the interviewing police officer are no longer part of the equation.  Dowthitt, 931 S.W.2d at 254-55; Rodriguez, 939 S.W.2d at 216.








Briefs for both appellant and appellee cite and emphasize the four custody situations
mentioned in Shiflet v. State, 732
S.W.2d 622, 629 (Tex. Crim. App. 1985), and Dowthitt, 931 S.W.2d at 255.[2]  We must look at all the circumstances
surrounding the interrogation, but Athe ultimate inquiry is simply
whether there [was] a >formal arrest or restraint on freedom of movement= of the degree associated with a
formal arrest.@ 
California v. Beheler,
463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520 (1983); Rodriguez,
939 S.W.2d at 216.








AStationhouse questioning does not, in
and of itself, constitute custody.@ 
Dowthitt, 931 S.W.2d
at 255.  Here we find the
questioning of Mr. Sanchez did not cross the line into custodial
interrogation.  In a similar case, after
noting that no law prohibits police officers from requesting individuals to
accompany them to the station for an investigation nor any law that forbids one
from rejecting such requests, the Austin Court of Appeals stated that A[i]f the
circumstances show that the individual acts upon the invitation or request of a
police officer and there are no threats, express or implied, that he will be
forcibly taken, then that person is not in custody for the purposes of Miranda.@ 
Rodriguez, 939 S.W.2d at 217.  AThe fact that a noncustodial
situation involved a >coercive environment= is not sufficient to constitute
custody for Miranda purposes.@ 
Id. (citing Oregon v. Mathiason,
429 U.S. 492, 495, 97 S.Ct. 711, 714 (1977)).  The Rodriguez court found that the
defendant was not in custody at the time and that Miranda warnings,
though given, were not necessary.  Id.








Here, similarly, the interview by
Detective Therwhanger was not Acustody.@ 
It is true that Sanchez was the focus of allegations made by KK; the
detectives investigating the matter did approach him at his workplace; Sanchez
did accompany them to the station house, and did speak with them in the
unlocked interview room.  There is no
evidence, however, to suggest that any of this was involuntary.  At no point was Mr. Sanchez physically
compelled to accompany the officers to the station house or to speak with
them.  He was not placed under arrest nor
was he handcuffed.  The record does not
show that he was ever denied any request to leave.  Whether he participated in the interview
because of a sense of guilt associated with the crime, some fear of or respect
for authorities, or just a sense of being a good citizen called upon to help
with the investigation is irrelevant to the objective inquiry of whether he was
in custody on April 5 when he spoke with Detectives Beasley and Therwhanger.  Thus,
the trial court was correct in concluding that Mr. Sanchez was not in
custody.  Sanchez=s second point of error is overruled.

No
need for findings where no custodial interrogation

Appellant=s first point of error claims that
the cause should be remanded for entry of findings of fact and conclusions of
law regarding the statements to Detective Therwhanger.  In light of our conclusion that Mr. Sanchez
was not in custody at the time he spoke with Detectives Therwhanger
and Beasley, no findings of fact or conclusions of law were required.  Cerda v. State, 10 S.W.3d 748, 752 (Tex. App.--Corpus Christi
2000, no pet.) (citing Wicker v. State,
740 S.W.2d 779, 783-84 (Tex. Crim. App. 1987)).   Sanchez=s first point of error is overruled.

Error
waived on any improper comment by trial court

Sanchez=s third point urges that the trial
court erred by commenting to the jury on his right to silence.  We find any error was waived by Sanchez=s failure to object to the challenged
comment.

After the State rested its
case-in-chief, the trial judge announced to the jury, AThere are a couple of matters we need to
take care of before we ask the Defendant to start his testimony.@ 
The jury was then removed for a ten minute recess.  There was no objection by either party to the
court=s comment.  Following the recess, Sanchez did introduce
testimony from witnesses, and he took the stand in his own defense.








Appellant argues that the trial court=s statement was an improper comment
to the jury regarding the defendant=s right to remain silent as guaranteed
by the Fifth Amendment of the United States Constitution, Article 1, Section 10
of the Texas Constitution, and Article 38.08 of the Texas Code of Criminal
Procedure, and further was fundamental error not requiring an objection.  We disagree that the comment constituted
fundamental error.

Generally,  counsel must object to the trial judge=s improper comments during trial in
order to preserve error.  Tex. R. App. P. 33.1; Blue v. State, 41 S.W.3d 129, 131
(Tex. Crim. App. 2000) (plurality opinion).  However, the Court of Criminal Appeals has
found that A>[s]ome
rights are widely considered so fundamental to the proper functioning of our
adjudicatory process as to enjoy special protection in the system.  A principle characteristic of these rights is
that they cannot be forfeited.  That is
to say, they are not extinguished by inaction alone.  Instead, if a defendant wants to relinquish
one or more of them, he must do so expressly.=@ 
Blue, 41 S.W.3d at 131 (citing Marin v. State, 851 S.W.2d
275, 278 (Tex. Crim. App. 1993), overruled on
other grounds).








Marin set forth three categories into which
the rules of the judicial system fall:  A(1) absolute requirements and
prohibitions; (2) rights of litigants which must be
implemented by the system unless expressly waived; and (3) rights of litigants
which are to be implemented upon request.@ 
Marin, 851 S.W.2d at 279.  The first are independent of the litigant=s wishes and cannot be waived or
forfeited by the parties.  Id.  These include jurisdictional matters, as well
as nonjurisdictional principles of due process and
separation of powers that render conflicting legislation void from its
inception.  Id. (citing Garcia
v. Dial, 596 S.W.2d 524, 527 (Tex. Crim. App.
1980); Ex parte Stanley, 703 S.W.2d 686 (Tex. Crim. App. 1986); Rose v. State, 752 S.W.2d 529,
552-553 (Tex. Crim. App. 1988)).  Other absolute requirements found by courts
are:  that a district court must conduct
its proceeding at the county seat, the constitutional prohibition on ex post
facto laws, and certain constitutional restraints on the comments of a
judge.  Saldano
v. State, 70 S.W.3d 873, 888-89 (Tex. Crim. App.
2002) (citing Stine v. State, 908 S.W.2d 429 (Tex. Crim.
App. 1995) (plurality opinion); Ieppert v.
State, 908 S.W.2d 217 (Tex. Crim. App. 1995); Blue
v. State, 41 S.W.3d 129 (Tex. Crim. App. 2000)).








In Blue v. State, upon which
Sanchez relies in claiming fundamental error, the trial court=s comments were an egregious
violation of defendant=s rights.  There, the
court inexplicably told the jury that the defendant had received a plea offer
and was contemplating whether to accept it and plead guilty.  Blue, 41 S.W.3d at
130.  The trial court stated that
he would Aprefer@ that the defendant plead, implying
that the plea should be one of guilty.  Id.  Then the trial judge attempted to explain why
a defendant, though innocent, might decide to not testify.  Id. 
In his explanation, he included an illustrative example of an attorney,
putting a guilty ASister Teresa@ on the stand because she looks so innocent and Anobody thinks she would tell a lie.@ 
Id.  Defendant Blue did not
object to any of these statements.  Id.  The Court of Criminal Appeals, by a
plurality, found that the trial judge=s comments tainted the presumption of
innocence of the defendant, and that such comment was fundamental error of
constitutional dimension not requiring objection at trial.  Blue, 41 S.W.3d at
129, 132.  Two judges concurred,
finding that the judge=s comments violated the right to an impartial judge or an
impartial tribunal.  Id.
at 135.

Clearly, comments that taint the
defendant=s presumption of innocence are
fundamental and require no objection.  United States v. Bray, 546 F.2d 851 (10th Cir. 1976); United
States v. Lanham, 416 F.2d 1140 (5th Cir. 1969).  Likewise, the right to an impartial judge or
tribunal has always been recognized.  U.S. Const. amend.
V, VI; Tex. Const. art. I, '' 10, 19.  It is because these rights were implicated
that the comments were held to be fundamental and subject to assertion for the
first time on appeal.  Oulare
v. State, 76 S.W.3d 231, 233 (Tex. App.--Amarillo 2002, no pet.).  Nevertheless, in Blue, one writer
warned that the judge=s comments were Aso egregious@ as to deem him biased and that the
case was Ahighly unique and litigants should not
view this holding as an invitation to appeal without making proper, timely
objections.@ 
Blue, 41 S.W.3d at 139 (Keasler, J.,
concurring).








Declaring an error to be so
fundamental as to require no objection during trial is something we must
approach with great caution.  This
caution is reflected in several opinions distinguishing Blue.  See Saldano, 70
S.W.3d 873 (equal protection and due process violations in admission of expert
testimony that race and ethnicity were a factor in determining future
dangerousness was not fundamental error); Oulare,
76 S.W.3d 231 (comments of trial judge purportedly implying that police
officers were telling the truth and that identified the jurors as Aa vital part of our government@ was not fundamental error); Calderon
v. State, 950 S.W.2d 121, 140 (Tex. App.--El Paso 1997, no pet.) (defendant=s failure to object waived complaint of prosecutor=s improper comment on the defendant=s failure to testify).








We recognize that in our system,
where the trial judge sits as an impartial arbiter in a proceeding where the
prosecutor and the defendant obviously take sides, some distinction must be
made between improper comments by counsel and those by the court.  See Blue, 41 S.W.3d at 131 (citing Lagrone v. State, 84 Tex. Crim.
609, 209 S.W. 411, 415 (1919)). 
Fundamental to the legal system is the notion that a defendant must be
afforded the presumption of innocence.  Blue,
41 S.W.3d at 132. 
A corollary to this is that a trial judge should not impress upon the
jury his or her view of how the case should be decided.  Blue, 41 S.W.3d at 131 (citing Lagrone v.
State, 84 Tex. Crim.
609, 209 S.W. at 415). 
This is at the heart of the rules forbidding judges to comment to the
jury on the weight of evidence presented as well as in the prohibition on
judges acting as witnesses in a case in which they are sitting as the presiding
judge.  Tex.
Code Crim. Proc. Ann. art. 38.05
(Vernon 1979); Tex. R. Evid.
605.  Nevertheless, in contrast to the
egregious comments in Blue, the trial court here did not show bias nor
attack the basic structure or presumptions of the criminal justice system.  We cannot say his comment, albeit
ill-advised, constituted fundamental error, particularly as Sanchez did indeed
present evidence and did testify himself.[3]  Sanchez=s third point of error is overruled.

Proceeding
to verdict with eleven jurors

Appellant=s fourth point of error claims that
the trial court should have declared a mistrial after one juror discovered he
was related to the complaining witness. 
We disagree.

During trial, juror Norman Brown
realized that his wife was the cousin of the complaining witness=s stepmother.  The juror stated that he did not know the
stepmother=s married name and only recognized
the connection when he saw the stepmother=s parents in the courtroom.  When asked about the witness, Juror Brown
stated, AI don=t think I have ever seen her or heard
of her.  I have never met her.@ 
The juror also stated that his decision would not be altered by the
relationship.








During jury selection after one
prospective juror mentioned knowing a Awhole bunch of kids@ at the school that KK attended, the
prosecuting attorney inquired, AAnybody else here know K____ K____?  The mother is
Cydne Robbins. 
The father is Ray K____.@  Counsel for Mr.
Sanchez asked a general question of the panel, A[D]oes
anybody know anybody named K____?@ 
While several panel members responded to the question, Brown did
not.  Appellant=s trial counsel informed the court
that had he known Brown was related to KK, he would have exercised a challenge.

Counsel for Sanchez moved for a
mistrial or, in the alternative, AI would even be willing to go forward,
after we have done a day and a half, with eleven jurors, if the State would be
willing to do that and the Judge would consent to it.@ 
After the trial judge denied the motion for mistrial, counsel repeated
his request to proceed with eleven jurors, which the trial court initially
denied.

The next day, before final argument
and jury deliberations, the judge reconsidered his ruling in light of Hatch
v. State, 958 S.W.2d 813 (Tex. Crim. App.
1997).  Based upon that decision, the
judge prepared a document reflecting defendant=s waiver of a twelve person jury in
favor of eleven jurors.  After the judge
presented this document, Mr. Sanchez and his counsel requested a moment to
speak in the hallway, which was granted. 
The trial court then proceeded as follows:

THE
COURT:  Okay.  Let=s go on
the record a minute.  The Court has been
handed a copy of a document titled Waiver of Trial by Jury, which in the body
of indicates that the Defendant is asking the Court and requesting the Court
excuse Juror Norman Keith Brown, and waiving his right to a trial by a jury of
twelve persons and consenting to a trial by jury of eleven persons.

 

It
appears to be signed by Mr. Sanchez and by his attorney, Mr. McLeaish.  You did
sign this, is that right, Mr. Sanchez?

 

THE
DEFENDANT:  Yes, I did.

 

THE
COURT:  Is that what you are asking me to
do?

 

THE
DEFENDANT:  Yes, your
Honor.








THE
COURT:  And that=s what you want me to do?

 

THE
DEFENDANT:  Yes, your
Honor.

 

THE
COURT:  You have talked to your attorney
about this, Mr. McLeaish?

 

THE
DEFENDANT:  Yes, sir.

 

THE
COURT:  You believe you understand your
rights to a trial by jury, and the fact that you have a right to continue with
a trial by twelve, and appeal the fact that I may have made a mistake in
requiring you to go forward; do you understand that?

 

THE
DEFENDANT:  Yes, your
Honor.

 

THE
COURT:  But your desire is to ask that
Mr. Brown be excused, and go to the jury with just eleven persons?

 

THE
DEFENDANT:  Yes, sir.

 

THE
COURT:  And accept their verdict?

 

THE
DEFENDANT:  Yes, your
Honor.

 

The jury of eleven later returned a unanimous verdict of
guilty on each of the two charges.  All
eleven jurors signed the verdicts in both the guilt and punishment phases.








Appellant claims that he was harmed
because he was forced to waive his right to trial by a jury of twelve persons
in order to protect his constitutional right to an impartial jury.  The record reflects that proceeding with
eleven jurors was an option first suggested by appellant as an alternative to
mistrial.  Under Hatch v. State,
overruling Ex parte Hernandez, 906 S.W.2d
931(Tex. Crim. App. 1995), proceeding with eleven
jurors is permissible if the defendant waives his statutory right to have a
jury composed of not less than twelve persons return a verdict in a noncapital case.  Hatch,
958 S.W.2d at 816. 
All parties agreed to this when they signed the waiver.

When one juror is found to be
objectionable, removing that juror from the panel is a preferred remedy to
mistrial, which should be limited only to situations of Amanifest necessity.@ 
Ex parte Fierro, 79 S.W.3d 54, 56 (Tex. Crim.
App. 2002).  That is particularly
so when, as here, the appellant requests that remedy and waives his right to a
jury of twelve.  The Court of Criminal
Appeals even suggests in Ex parte Fierro that some situations may allow a questionable
juror to remain on the panel, rather than force a mistrial.  Id. at 57.  Not considering these alternatives would have
been an abuse of discretion by the trial court judge.  Id. 
The judge in this case correctly considered and chose between the
options.  Sanchez=s fourth point of error is overruled.

Conclusion

The trial court=s judgment is affirmed.

 

SUSAN
LARSEN, Justice

October 17, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)

 











[1]Prior
to Stansbury, four factors were considered
relevant to the inquiry of whether a person was in custody:  (1) probable cause to arrest, (2) subjective
intent of the police, (3) focus of the investigation, and (4) subjective belief
of the defendant.  Dowthitt,
931 S.W.2d at 254 (citing Meek v. State, 790 S.W.2d 618, 621, 622 (Tex. Crim. App. 1990)). 
Under Stansbury, the subjective
considerations have fallen away from the inquiry, at least in matters
concerning adult defendants.  Dowthitt, 931 S.W.2d at 254; Rodriguez, 939
S.W.2d at 216; see also In re D.A.R., 73 S.W.3d at 510-11.





[2]Dowthitt provides:

 

We have outlined at least four general situations which may
constitute custody: (1) when the suspect is physically deprived of his freedom
of action in any significant way, (2) when a law enforcement officer tells the
suspect that he cannot leave, (3) when law enforcement officers create a
situation that would lead a reasonable person to believe that his freedom of
movement has been significantly restricted, and (4) when there is probable
cause to arrest and law enforcement officers do not tell the suspect that he is
free to leave.  Shiflet,
732 S.W.2d at 629. 
Concerning the first through third situations, Stansbury
indicates that the restriction upon freedom of movement must amount to the
degree associated with an arrest as opposed to an investigative detention.  Concerning the fourth situation, Stansbury dictates that the officers=
knowledge of probable cause be manifested to the suspect. Such manifestation
could occur if information substantiating probable cause is related by the
officers to the suspect or by the suspect to the officers.  Moreover, given our emphasis on probable
cause as a >factor= in other cases, situation four does
not automatically establish custody; rather, custody is established if the
manifestation of probable cause, combined with other circumstances, would lead
a reasonable person to believe that he is under restraint to the degree
associated with an arrest.  Dowthitt, 931 S.W.2d at 255.





[3]Sanchez
argues that the trial court=s
comment, made before the defense began its case, could have resulted in
defendant feeling compelled to testify. 
He relies upon Henderson v. State, 13 S.W.3d 107, 110 (Tex.
App.--Texarkana 2000, no pet.).  We see
two flaws in this argument.  First, there
is simply no evidence in this record that Sanchez felt compelled to testify
following the trial court=s
remark.  Second, the remark is not such a
clear reference to Sanchez=s
intention to testify that we could find a coercive effect without some evidence
to support the claim.  We therefore
believe Henderson is distinguishable.